# Thompson *v.* The State.

## *Indictment for Betting at "Craps."*

1. *Sufficiency of indictment.*—A form of indictment for betting at a game played with cards, dice, or some device or substitute for cards or dice, being now prescribed by statute (Code, § 4057; Form No. 16, p. 267), it is sufficient to follow that form, and it is not necessary to aver that the game *was played.*

2. *Proof of playing and betting by other persons.*—Since the defendant could not bet with himself on the game. it is proper, if not necessary for the prosecution to prove that other persons present played and bet on it.

3. *Refreshing recollection of witness by memorandum.*—While it may not be permissible for the solicitor, during the examination of a witness, "to read from a memorandum of his testimony before the grand jury," he may "ask questions from the memorandum to refresh the memory of the witness as to his testimony before the grand jury."

4. *Argumentative and abstract charges* are properly refused; and also a charge which is based. not on the belief of the jury as to the tendencies of the evidence, but on· what the evidence shows, or fails to show.

5. *Proof of betting by defendant.*—Where one witness testifies that he saw the defendant and others playing and betting at a game of "craps," but does not state what was bet, and another, who was present at the time, testifies that the players "would all get down on their knees in a circle, put up the money, and throw the dice; that he saw defendant down on his knees, but does not recollect positively that he saw him put up any money, or shoot the dice, but his best recollection is that he did play,"—the jury may infer that the defendant bet money on the game.

6. *What is public house.*—A dwelling-house may become a public house within the statutes against gaming, if several persons are in the habit of going to it frequently for the purpose of playing cards or "craps," although at one time the killing of a negro there "broke off the playing to some extent."

FROM the Criminal Court of Pike.

Tried before the Hon. WM. H. PARKS.

The indictment in this case charged that the defendant, Frank Thompson, "bet at a game played with cards, or dice, or some device or substitute for cards or dice, in a public house, highway, or some other public place, or at an out-house where people resort." There was a demurrer to the indictment, "because it does not allege that any game was in fact played;" but the demurrer was overruled, and issue was joined on the plea of not guilty. The opinion states most of the evidence ad-

[Thompson v. The State.]

duced on the trial, and the exceptions reserved by the defendant. The playing and betting to which the witnesses testified, and in which the defendant was charged with participating, took place at the house of one Stegars, during Christmas week, 1891; and the witnesses further testified that they, with others, frequently went to the house of said Stegars, sometimes by invitation, and sometimes without, for the purpose of playing cards, or "shooting craps," and generally paid a small sum to the wife of said Stegars; that a negro, one Love, was killed there, or in that neighborhood, some time during the summer of 1891, and this killing "broke up the playing to some extent." On this evidence, the defendant asked the following charge, and excepted to its refusal: (2.) "Stegars' house may have been a public house before the 'Love shooting,' but, if it is shown by the evidence that for some cause people stopped going there to play, and the evidence fails to show that any game had been played there for several months prior to the game at which the defendant is said to have played, they must find the defendant not guilty."

R. L. HARMON, for appellant.

WM. L. MARTIN, Attorney-General, for the State.

HARALSON, J.—1. Before the Code of 1886, went into effect, we held, that it was necessary to aver in the indictment, that the game at which the betting was alleged to have been done *was played*. *Smith v. The State*, 63 Ala. 55; *Johnson v. The State*, 75 Ala. 7; *Dreyfus v. The State*, 83 Ala. 54; *Tolbert v. The State*, 87 Ala. 27. The present Code, under which this indictment appears, prescribes a form which had not before existed. The indictment in this case follows this form strictly, and is in all respects sufficient.—*Rosson v. The State*, 92 Ala. 77; *Darby v. The State*, in Mss.

2. The witness, Carter, for the State testified, that he saw the defendant bet at a game called "craps," at the dwelling-house of Edmund Stegars, on the last Monday before Christmas in 1891, and that there were several other persons there who played the same game and bet on it. The solicitor then asked the witness, whether the other persons there that day played at the same game and bet on it. This question asked the witness to state again, the same thing which he had just stated, without objection on the part of defendant. The defendant objected to the

question, on the ground that it was illegal and irrelevant, in that, whether other persons played or bet in the game then played was no evidence that the defendant bet or played. The question and answer were allowed, and the court committed no error therein. There could be no conviction as charged without betting, and there could be no betting without playing, and some one or more persons with whom to play and bet. The defendant could not play or bet with himself. It was necessary, therefore, to show these facts with others in order to show defendant's guilt.

3. The solicitor, on the examination of the witness, was proceeding to read from a memorandum of the witness' testimony before the grand jury, when an objection to his doing so was made by defendant, and sustained by the court. The bill of exceptions states, that "the solicitor was then permitted to ask questions from the memorandum to refresh the witness as to his testimony before the grand jury, and the defendant duly excepted." In what manner the solicitor asked questions from the memorandum, for the purpose stated, and in what the objection to his doing so consisted, does not appear. A witness may refresh his memory by a memorandum made at or about the time to which it relates, when he knows it to be correct, and after refreshing his memory, can testify from independent recollection.—*Stoudenmire v. Harper*, 81 Ala. 242; *Acklen v. Hickman*, 63 Ala. 494. And a party may, for the purpose of refreshing the memory of his own witness, when put to a disadvantage by an unexpected answer, or when the witness fails to answer as was expected of him, ask him if he had not, at a certain time and place, made certain statements, even if they are inconsistent with his testimony just given.— *White v. The State*, 87 Ala. 24; *Griffith v. The State*, 90 Ala. 583. The witness had just stated, that he did not remember how many times he had been to Edmund Stegars' house, within twelve months before he saw defendant play and bet, and had seen "craps" played there ; but, after the questions propounded by the solicitor, from the memorandum referred to, he stated, that his memory was refreshed, and he had seen craps played at said Stegars' house as many as four or five times within the time specified. There was no error in allowing the witness to be refreshed in his memory in the manner objected to. *Billingslea v. The State*, 85 Ala. 325.

4. There was no error in refusing to give charge No. 2, asked by defendant. It was argumentative and abstract, and, if not otherwise vicious, was properly refused on these grounds. The witness, Carter, testified, "that he had seen

[Thompson v. The State.]

craps played at Stegars' house as many as four or five times during the twelve months prior to the game in which the defendant was charged to have played; and witness, Wiley, for the State, testified, "that he had seen dice or craps played there as many as three or four times, during the twelve months preceding the game above mentioned, but that he did not have any recollection of seeing more than one or two games played there, during a period of about six months next before the game above mentioned," for betting at which, defendant was being tried. The charge is predicated, not upon the belief of the tendencies of this evidence; but it is based on what the evidence shows or fails to show, without reference to the jury's belief of the evidence.

5. The defendant asked the court to give the general charge, which was properly refused. The ground on which this charge was requested is based on the supposed absence of proof showing that the defendant bet any money, bank-notes, or other thing of value. This was necessary to have been shown, to the satisfaction of the jury.—*Chambers v. The State*, 77 Ala. 80; *Dreyfus v. The State*, 83 Ala. 54. The first of the witnesses examined proved the playing and betting by defendant, but he does not state what he bet. The other witness stated, that on the day he saw defendant at Stegars' house,—the occasion selected ·by the State,—there were a good many there, engaged in crap-shooting; "that when they would shoot craps, they would all get in a circle or ring, and get down on their knees, and put the money up and throw the dice. He saw defendant down on his knees, but did not recollect, positively, that he saw him put any money up, or shoot the dice, but that his best recollection was, that he did play." This evidence afforded ground for inference, and tended to show that the defendant did bet money at the game played.

6. The evidence in the cause tended to show that the dwelling-house of Stegars, where the game was played, was a public house in the meaning of the statute, and was proper for the consideration of the jury.—*Downey v. The State*, 90 Ala. 644: *Jacobson v. The State*, 55 Ala. 151; *Coleman v. The State*, 20 Ala, 30.

Affirmed.