(83 South. 95)

WILLINGHAM v. BIRMINGHAM RY., LIGHT & POWER CO.
(6 Div. 911.)

(Supreme Court of Alabama. June 26, 1919. On Rehearing, Oct. 23, 1919.)

1. CARRIERS �köö315(3) — PLEADING AND ISSUES; ASSAULT ON PASSENGER.

Where one alleges that he was a passenger when assaulted by a motorman, proof of that fact was essential to recovery.

2. CARRIERS �köö247(4)—RELATION OF CARRIER AND PASSENGER; TERMINATION.

The relation of carrier and passenger is not terminated by the passenger's mere act of leaving the car, but continues until he has a reasonable opportunity to leave the car and the roadway of the company after the car has reached the station or stopping place to which he is entitled to be carried, but where the carrier receives and discharges its passengers in the public highway, the relation of passenger and carrier terminates as soon as the passenger voluntarily leaves the car at such place and alights upon the public thoroughfare, and one who was assaulted by a motorman after he had voluntarily left a street car and had taken several steps was not a passenger when assaulted, although the motorman' had started using offensive language toward him while he was yet a passenger.

3. TRIAL ⊦köö143—JURY QUESTION; CONFLICTING EVIDENCE.

Where the evidence is conflicting as to a matter of fact, the question is for the jury.

On Rehearing.

4. CARRIERS ⊦köö320(2)—ASSAULT ON PASSENGER; TERMINATION OF RELATION QUESTION FOR COURT.

In an action by one claiming to be a passenger when assaulted by motorman after leaving a street car on a public street, evidence *held* to show that plaintiff left the car volun-

---

tarily, and court properly refused to submit question whether he was a passenger.

Sayre, Gardner, and Thomas, JJ., dissenting.

Appeal from Circuit Court, Jefferson County; C. W. Ferguson, Judge.

Action by Elias Willingham against the Birmingham Railway, Light & Power Company, for damages for injuries suffered while a passenger. Judgment for the defendant, and plaintiff appeals. Affirmed.

First count, after alleging the relation of passenger and carrier, charges that while plaintiff was a passenger the motorman, an agent or servant of the defendant, in charge of and controlling the operation of said car, in violation of his duty as such agent or servant, assaulted the plaintiff by striking him in the face. Count 2 charges the same facts as being willfully and maliciously done. Count 3 charges the same facts, and in addition to the assault charges the use of harsh, abusive, and unkind language by the motorman to plaintiff. The other counts charge the same facts in varying phraseology.

The following excerpts from the evidence show where plaintiff was when he charges that he was struck and abused:

Charlie Baron: After the motorman opened the gate for him and he had stepped out on the ground, the motorman abused him. Elias had turned around and was going home; he had taken three or four steps towards home after he got down off the car; he had gotten three or four steps from the car when the motorman got down off the car and was walking just in a common gait, and he turned around, and the motorman struck him as he turned. After he got on the ground, the motorman only asked him why he didn't shut the door.

Earl Simmonds: The car stopped, and Elias went to get off, and the motorman told him to shut the door. Elias stepped down on the ground and started up the street, and when he was four or five steps from the car, the motorman got off and struck him.

Lula Moody: Elias got off between the store and car, and the street comes right in front of the little store, and Elias was going towards the street, but had not reached the street when the motorman struck him. There is no station there, just the street.

J. L. Ryan testified, that they were from 8 to 15 feet from the car track when the blow was struck. Loyd Reeves testified that he was on the outside when the car rolled up, and that it stopped and stood so long that he and another fellow walked around to see what was the trouble, and that he saw the two men. Plaintiff himself testified that he stepped to the ground, and the motorman followed; that he heard some one coming behind him, and turned around after he had gotten three or four steps from the car, and was struck.

Frank S. White & Sons and Joseph E. Robinson, all of Birmingham, for appellant.

Tillman, Bradley & Morrow, of Birmingham, for appellee.

McCLELLAN, J. [1] The plaintiff, appellant, stated his case against the appellee, a street railway company operating lines as a common carrier of passengers, in several counts, under the averments of five of which the testimony was taken. The allegation common to all of these counts defined the plaintiff's relation to have been that of a passenger at the time the wrongs averred were suffered by him at the hands of the carrier's motorman. The plaintiff's evidence went to show that as he was preparing to leave the car on which he was, in fact, a passenger the motorman commanded him to close the door through which he was passing from the body of the car to the platform; that, though in response to the command he told the motorman, in a civil manner, that another man behind him would close the door, the motorman upbraided him for' not closing the door, and finally, while he was yet a passenger on the car, applied to him abusive and insulting language, and, after the plaintiff had alighted from the car, pursued him and struck him with the "controller," a heavy metal piece used in the operation of the motor, inflicting very severe injuries upon the plaintiff. The evidence for the defendant tended to contradict the plaintiff's contention that the motorman offended or abused the plaintiff in any way while he was on the car, while he was a passenger. The court submitted this controverted issue to the jury. In view of the allegation that the plaintiff was a passenger even when he was assaulted by the motorman, an essential prerequisite to the plaintiff's right to recover for the injuries resulting from the blow with the "controller," for injuries inflicted after the plaintiff had left the car, was that he should have been a passenger at the time. The trial court concluded that on the whole evidence the plaintiff's previous relation as a passenger had terminated before the plaintiff was assaulted by the motorman.

[2] Differing in degree, at least, from the rule prevailing in other jurisdictions with respect to the time when the relation between a street railway carrier and a passenger ceases (10 C. J. pp. 625, 626; 4 R. C. L. pp. 1047, 1048, and notes), in this jurisdiction the accepted rule is that the relation is not terminated by the passenger's mere act of leaving the car, "but continues until he has a reasonable opportunity to leave the car and the roadway of the company," after the car has reached the station or stopping place to which he is entitled to be carried. Melton v. B. R., L. & P. Co., 153 Ala. 95, 97, 45 South. 151, 16 L. R. A. (N. S.) 467; B. R., L. & P.

Co. v. O'Brien, 185 Ala. 617, 621, 64 South. 343.

The general rule applicable to carriers having exclusive control or occupation of its tracks, stations, and grounds for the reception and discharge of passengers cannot, in the nature of things, be applicable to a street railway carrier which receives and discharges its passengers in a public highway. 4 R. C. L. p. 1047, and note.

From a careful review of the whole evidence, this court concurs in the trial court's conclusion that the relation of passenger and carrier had terminated at the time the motorman assaulted the plaintiff, who had left the car and was moving therefrom over the public street in which he had alighted. It indisputably appears that the place where the plaintiff alighted was a public thoroughfare; that at the time of the assault the plaintiff had voluntarily alighted from the car; that he was then a step or two, at least, from the car, a pedestrian in the street, not a passenger of the carrier; that he had then left the car "and the roadway" as effectually and completely as if he had traveled 20 or more feet. The O'Brien Case, cited above, and other decisions delivered here where the question of the safety of the place of discharge of a passenger was a factor in the inquiry, contribute nothing to invite a different conclusion.

The fact (if so) that from the time of the application of offensive language by the motorman to the plaintiff, while the latter was yet a passenger, to the time the assault was committed on the plaintiff—after he left the car and was in the street—was a continuous transaction between the men could not avail to postpone the time when the plaintiff's relation as a passenger ceased, a termination of relation that was accomplished by the voluntary act of the plaintiff, not resulting from any compulsion on the part of the motorman.

The case of Alabama City, etc., Ry. Co. v. Sampley, 169 Ala. 372, 53 South. 142, is without application to the facts presented in the case under review. Sampley was held to be a passenger at the time he was assaulted by the conductor of the street car. It appears from the opinion that Sampley was carried by his destination; that when the conductor demanded a second fare an altercation arose; that, according to the plaintiff's contention, "defendant's conductor attacked plaintiff, * * * the rest following uninterruptedly," while in the case under review the evidence showed without dispute that the plaintiff voluntarily alighted at his destination, no attack upon him being made while he was on the car. As before stated, the court in this instance submitted to the jury the issue whether the plaintiff was subjected to indignity or insult through the language applied to him while he was yet on the car.

203 Ala.—23

[3] The remaining controverted issue under the evidence was whether the motorman subjected the plaintiff, while he was a passenger, to abuse or insult, in breach of the duty defined in Birmingham, etc., Ry. Co. v. Baird, 130 Ala. 334, 30 South. 456, 54 L. R. A. 752, 89 Am. St. Rep. 43. That was a question for the jury to decide, under the conflicting evidence. The general affirmative charge could not have been correctly given on that issue. No prejudicial error appears to have colored or impaired the fair submission of this issue to the jury.

The trial court was well advised in its statement that the matter of self-defense, referred to in special requests for instructions, was not pertinent to the true issues on the trial, in view of the correct conclusion that the assault and battery occurred after the relation of passenger and carrier had terminated. It appears from the bill of exceptions that plaintiff's counsel assented to the court's statement that charges on self-defense were abstract—"in the view taken by the court of the evidence and the law"—a view that proceeded from a correct conclusion upon the whole evidence touching the time when the relation of passenger and carrier terminated, which was prior to the time when the motorman struck the plaintiff.

The judgment is not affected with error. It is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.

SAYRE and THOMAS, JJ., dissent.

GARDNER, J. (dissenting). I rest my dissent upon the authority of Ala. City, G. & A. Ry. Co. v. Sampley, 169 Ala. 372, 53 South. 142, which, in my opinion, is conclusive to a reversal of this cause.

### On Rehearing.

McCLELLAN, J. The trial court having correctly submitted to the jury the controverted issue whether the motorman in fact applied offensive language to the plaintiff while he was a passenger on the car, the remaining major inquiry was the soundness of the trial court's conclusion that the material averment, in all the counts, of the existence of the relation of passenger and carrier at the time the assault alleged was committed by the motorman on the plaintiff was not supported, in any degree, by the evidence, the fact, as found, being that this relation had terminated at the time of the alleged assault. This latter inquiry and the trial court's conclusion thereon did not involve the application of the doctrine of respondeat superior, but, far differently, did require the determination of the question whether a material averment in the complaint was supported by any tendency of the

evidence. A clear conception of the question presented and decided, below and here, is absolutely necessary to avoid confusion and to invite a well-founded judgment.

The brief for the rehearing insists that our conclusion of fact that plaintiff left the car voluntarily at his destination, is not justified by the undisputed evidence; that that matter was a jury question. A careful reconsideration of the whole evidence confirms the original conclusion. The alleged assault was committed at Sixty-Fifth street, in a public thoroughfare, where the cars customarily stopped to discharge passengers. There is no evidence whatever of an assault on the plaintiff by any one while he was on the car. The plaintiff's own testimony demonstrates the correctness of the court's conclusion on this matter. He testified:

"I was going to Sixty-Fifth street. I was working at night at Stockham Pipe & Fitting Company, and I was going home in the morning. * * * I gave a signal for the car to stop at Sixty-Fifth street. I rung the bell. * * * When I gave the signal the car stopped. The door between me and the vestibule was closed. I rings the bell, and old man Charlie was sitting at the door, and he pulled the door open when I rung the bell, and I steps by, and the motorman asked me, 'Why don't you shut the door?' I says, 'The other man will shut the door;' and I stepped to the ground, and he followed behind me. I heard something behind me. I looked around to see what was behind me, and he landed me over the eye. As I was going out of the door the motorman said, 'Black ———, I will kill you.' I stepped on the ground, and he followed me out. I got a step or two, or two or three steps from the car, and I heard something behind me, and looked around and got the lick. After he hit me I said, 'What did you hit me for?' He says, 'Don't you stoop; * * * I will kill you.' I was like this (indicating). It must have been a pretty hard blow; it busted my eyeball out. I had gotten off there before that. That was the place where passengers waited to get on and off the car, there where I got struck."

Cross-examination:

"When I went by the motorman he asked me why I didn't shut the door. I says, 'The other man is going to shut the door;' the old man was trying to shut it. The motorman seemed a little horsey the way he spoke. He repeated it the second time, and said, 'Why in the hell don't you shut the door?' He got a little worser. When he said that I told him the man was going to shut the door. Then he said, 'Get off, you black ———.' At that time during this conversation the car was already stopped, and I was going by him. About the time the car stopped I was opposite him. * * * I didn't know where he was until he hit me. * * * He took the controller handle and stepped off the car, and followed me two or three steps I will say, three or four steps, something like that, and struck me without notice at all."

[4] There is no other fact or circumstance disclosed by the evidence that tended to contradict the plaintiff's own statement, bearing on his voluntary departure from the car, or to show, in any degree, that plaintiff did not leave the car voluntarily, at his destination. It is insisted on the brief for rehearing that because, according to some of the evidence, the motorman said to the plaintiff, "Go on, you have said enough now," and "Get off, you black ———," as plaintiff was passing over the vestibule or platform of the car and down the steps leading to the ground, there was evidence before the jury tending to show that the plaintiff did not voluntarily leave the car. Since the plaintiff had already theretofore signaled the car to stop, at his destination (Sixty-Fifth street), and since he had left his seat in the car and passed through the door to the vestibule or platform where the motorman was in his place, in process of leaving the car, at his destination, it is not reasonably possible to attribute to these statements of the motorman an effect to show that the plaintiff did not voluntarily leave the car as he, himself, had indicated was his purpose in signaling the stopping of the car and in proceeding to leave it. The mere fact that the plaintiff might, had he desired, have ridden a greater distance on the car for the fare paid by him could not serve to institute a conflict in the premises, in view of the undisputed fact that as he approached his destination he signaled to stop the car and proceeded to leave it.

As pointed out in the original opinion, the case of Ala. City, etc., Ry. Co. v. Sampley, 169 Ala. 372, 53 South. 142, is plainly distinguishable from the case under review, because in that case there was evidence tending to show that the "defendant's conductor attacked plaintiff before he had alighted from the car"; that an assault, according to some of the evidence, was committed on Sampley while he was on the car; whereas, in this case there was no evidence of an assault upon the plaintiff on the car, and, besides, the plaintiff left the car voluntarily, as the evidence indisputably shows.

The argument in the brief otherwise is, in effect, only directed to the application of the law touching the termination of the relation of passenger and carrier, as we were at pains to state upon established authority in the original opinion. Having left the car voluntarily, at his destination, and, according to his own testimony, walked a few steps in the public street, away from the car, the plaintiff's relation as a passenger had terminated when the alleged assault was committed upon him from the rear and without notice. Aside from the controverted issue with respect to the offensive language the plaintiff claims was applied to him by the motorman while the plaintiff was on the car, the plaintiff was transported safely to his destination, alighted voluntarily from the car in a public street, and was walking away from the car when, according to his

own testimony, he was assaulted without notice from behind by the motorman who had left his place on the car. In the brief for rehearing counsel cite 10 C. J. pp. 892, 893, stating that where an "assault commenced in the carrier's vehicle is kept up after the passenger has alighted therefrom," the carrier is liable for both the initial assault and for the attendant consequences flowing therefrom in natural sequence, and as a part of one continuous transaction. The doctrine of that text, as well as the pertinent doctrine of the Sampley Case, would have application here if the motorman had commenced an assault on the plaintiff while he was on the car. The case cited on the brief of O'Brien v. St. Louis Transit Co., 185 Mo. 263, 84 S. W. 939, 105 Am. St. Rep. 592, is to be distinguished on the same ground, because the opinion in that case affirmatively discloses an assault by the conductor which was begun while the plaintiff was on the car, being carried by his destination; the court holding that the assault thus begun on the car was one continuous transaction, though taking place after the conductor and the plaintiff had left the car and gone to the sidewalk. The case of Johnson v. Washington Water Power Co., 62 Wash. 619, 114 Pac. 453, also presented a case where the employé had assaulted the plaintiff while he was on the car and undoubtedly still a passenger, the opinion disclosing that in response to a specific question presented to the jury the jury found that the plaintiff "was on the car when first struck."

While the grave injury which this plaintiff suffered from the blow struck by the motorman naturally awakens a just sympathy for his misfortune, yet that fact cannot be accorded influence in determining, under the undisputed evidence, the purely legal question: Had the relation of passenger and carrier ceased at the time the plaintiff was assaulted?

The application for rehearing must be denied.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.

SAYRE, GARDNER, and THOMAS, JJ., dissent.