## ALABAMA POWER CO. v. HALL. (3 Div. 693.)

(Supreme Court of Alabama. Jan. 22, 1925. Rehearing Denied April 16, 1925.)

1. **Carriers** ⊜⇒303(6)—**Must exercise highest degree of care to provide reasonably safe place for alighting.**

It is duty of common carriers of passengers, including street railways, to exercise highest degree of care in providing reasonably safe and convenient places for disembarkation of passengers.

2. **Carriers** ⊜⇒303(6)—**Must select reasonably safe and convenient place for alighting.**

When train or car stops at any place other than regularly appointed station or stopping place, and passengers are expressly or impliedly invited to alight, it is carrier's duty to select place that is reasonably safe and convenient, and to know whether place selected is of that character.

3. **Carriers** ⊜⇒303(7)—**Must give alighting passengers warning of danger at alighting place.**

If there is danger to alighting passengers from obstructions, surface inequalities, or other sources not known to them and not plainly

---

open to their observation, and of which carrier's servants are bound to take notice, it is servants' duty to warn passengers of danger.

**4. Carriers** ⊚⟶247(4)—**Relation of passenger continues until he has reasonable opportunity to leave car and roadway of company.**

Relation of passenger is not terminated by passenger's mere act of leaving car, but continues until he has reasonable opportunity to leave car and roadway of company, after car has reached station or stopping place to which he is entitled to be carried.

**5. Carriers** ⊚⟶303(9)—**Duty to furnish safe vehicle and to safely operate it ends when passenger alights and clears vehicle.**

Duty to furnish safe vehicle and to safely operate it ends when passenger alights and clears vehicle, in absence of injury from subsequent movement of car.

**6. Carriers** ⊚⟶303(7, 9)—**Carrier must warn passengers or keep disembarking place, dangerous because of darkness, lighted up.**

Where disembarking place during repairs to bridge over railroad cut was made dangerous by darkness, carrier had duty of warning passengers or maintaining lights, and it was immaterial whether passenger, who fell into cut and was killed, was invited to alight in darkness, or whether place was thereafter made dark by turning out lights of street car before passenger had reasonable opportunity to pass beyond zone of danger.

**7. Carriers** ⊚⟶303(9)—**"Transfer" does not necessarily carry duty to look out for passenger's personal safety after leaving car before resuming passage.**

"Transfer" is mere ticket entitling holder to resume passage, and does not necessarily carry duty to look out for his personal safety during interim.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Transfer.]

**8. Carriers** ⊚⟶347(9)—**Whether passenger who fell into railroad cut on alighting from street car was intoxicated held for jury on issue of contributory negligence.**

Whether passenger who fell into railroad cut after alighting from street car was intoxicated at all, or to what extent, *held* for jury, on issue of his contributory negligence.

**9. Carriers** ⊚⟶347(9)—**Issue of contributory negligence of passenger, killed by falling into railroad cut, after alighting from street car, held for jury.**

Whether passenger, who was killed by falling into railroad cut in nighttime, after alighting from street car, was contributorily negligent in failing to use reasonable care, though familiar with danger, *held* for jury, in view of evidence that car stopped nearer cut than it usually did.

**10. Witnesses** ⊚⟶400(1)—**Party, surprised by his witness' testimony, may contradict testimony by any legal evidence or by cross-examination.**

Party, surprised by testimony of his own witness, may contradict such testimony by any legal evidence or by cross-examination of witness to refresh his recollection or to show surprise and hostility.

**11. Witnesses** ⊚⟶380(5)—**Court properly refused to permit calling of other witnesses to prove contradictory statements of party's own witness.**

Where party was surprised by testimony of his own witness, court properly refused to permit him to prove witness' contradictory statements by other witnesses, as hearsay declarations not admissible as substantive testimony of facts stated.

**12. Appeal and error** ⊚⟶1015(5)—**Trial court's finding on issue whether juror rode home with plaintiff before verdict not disturbed on appeal.**

Trial court's finding on issue of fact, based on affidavits and oral evidence as to whether juror was given ride to his home by plaintiff before verdict was reached, will not be disturbed on appeal.

**13. New trial** ⊚⟶49—**Plaintiff, whose son drove juror home before verdict, held not required to defend such action; principle of agency not being applicable.**

Where juror, before verdict was reached, was given ride to his home by plaintiff's son and plaintiff's wife, plaintiff was not required to defend his action as respects element of intimate personal contact with juror; principle of agency not being applicable.

**14. New trial** ⊚⟶56—**Party's voluntary and unusual attentions and courtesies to jurors, evincing purpose to influence verdict, require setting aside of verdict.**

Voluntary and unusual attentions and courtesies by party or his representative to jurors, if evincing purpose to influence verdict, require setting aside verdict in favor of such party, regardless of whether wrongful conduct did influence jury.

**15. New trial** ⊚⟶49—**Plaintiff's conduct in having son drive juror to his home before verdict held not to require setting aside verdict.**

Plaintiff's conduct in having his son at juror's request, drive juror to his home from court before verdict was reached and at 2 o'clock in the morning, which did not put plaintiff to any expense, inconvenience, or delay, *held* not misconduct requiring setting aside of verdict.

**16. New trial** ⊚⟶27—**Findings of jury should be disturbed only for substantial cause.**

Solemn findings of jury selected according to law, and rendered on oath, should be disturbed only for substantial cause.

Appeal from Circuit Court, Montgomery County; Walter B. Jones, Judge.

Action for damages by M. C. Hall, as executor of the will of R. Cantelou, deceased, against the Alabama Power Company, for wrongful death of the testator. Judgment for plaintiff, and defendant appeals. Affirmed.

---

Martin, Thompson, Foster & Turner, of Birmingham, and Steiner, Crum & Weil, of Montgomery, for appellant.

A party, taken by surprise by unfavorable testimony of a witness called by him, may interrogate him as to previous inconsistent statements, and, if denied, may prove same. Murphy v. State, 120 Md. 229, 87 A. 811, Ann. Cas. 1914B, 1117; 1 Greenleaf on Evi. (15th Ed.) 588; 2 Wigmore on Evi. (2d Ed.) 260; Fox v. 44 Cigar Co., 90 N. J. Law, 483, 101 A. 184, 5 A. L. R. 723; Swift v. Short, 92 F. 567, 34 C. C. A. 545; Hays v. Tacoma (C. C.) 106 F. 48; Tacoma R. & P. Co. v. Hays, 110 F. 496, 49 C. C. A. 115; Randazzo v. U. S. (C. C. A.) 300 F. 794; State v. Jensen, 151 Minn. 174, 186 N. W. 581. Bryan v. State, 45 Fla. 8, 34 So. 243; Chism v. State, 70 Miss. 742, 12 So. 852; State v. Quinn, 2 Pennewill (Del.) 339, 45 A. 544; Beier v. St. L. Tr. Co., 197 Mo. 215, 94 S. W. 876; Clancy v. St. L. Tr. Co., 192 Mo. 615, 91 S. W. 519; Worley v. Spreckels, 163 Cal. 60, 124 P. 697; State v. Bowen, 263 Mo. 279, 172 S. W. 367; State v. Corneille, 153 La. 929, 96 So. 813. Plaintiff's intestate was not a passenger at the time of the accident. Willingham v. B. R., L. & P. Co., 203 Ala. 351, 83 So. 95; Hammett v. B. R., L. & P. Co., 202 Ala. 521, 81 So. 22; Niles v. Boston Elevated, 225 Mass. 570, 114 N. E. 730; Va. R. & P. Co. v. Dressler, 132 Va. 342, 111 S. E. 243, 22 A. L. R. 301. Defendant was not an insurer of testator's safety. O'Brien v. B. R., L. & P. Co., 197 Ala. 97, 72 So. 343. Decedent was guilty of contributory negligence. Montgomery & E. R. Co. v. Thompson, 77 Ala. 448, 54 Am. Rep. 72; Montgomery St. Ry. v. Smith, 146 Ala. 316, 39 So. 757; Wilson v. Detroit Co., 167 Mich. 107, 132 N. W. 762. The verdict should be set aside for the improper conduct of the plaintiff and a juror. K. C., M. & B. v. Phillips, 98 Ala. 159, 13 So. 65; Craig & Co. v. Pierson L. Co., 169 Ala. 548, 53 So. 803; L. & N. v. Turney, 183 Ala. 398, 62 So. 885; N. Y. L. Ins. Co. v. Turner, 210 Ala. 197, 97 So. 687; Driver v. Pate, 16 Ala. App. 418, 78 So. 412; Weaver v. State, 17 Ala. App. 506, 86 So. 179; Taylor v. State, 18 Ala. App. 466, 93 So. 78; Holladay v. State, 20 Ala. App. 76, 101 So. 86. That which one does by another, he does himself. 2 Mechem on Agency (2d Ed.) 1306.

Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for appellee.

A party may not impeach his own witness. Jebeles-Colias Co. v. Booze, 181 Ala. 456, 62 So. 12; Sou. Bell Tel. Co. v. Mayo, 134 Ala. 641, 33 So. 16; Blackmon v. C. of G., 185 Ala. 635, 64 So. 592; 6 A. L. R. 862; Hickory v. U. S., 151 U. S. 303, 14 S. Ct. 334, 38 L. Ed. 170; Bradford v. Bush, 10 Ala. 386; Griffin v. Wall, 32 Ala. 149; White v. State, 87 Ala. 24, 5 So. 829; L. & N. v. Hurt, 101 Ala. 34, 13 So. 130; Campbell v. State, 23 Ala. 44; Hemingway v. Garth, 51 Ala. 530; Gandy v. State, 81 Ala. 68, 1 So. 35; Thomas v. State, 117 Ala. 178, 23 So. 665; Davis v. Anderson, 163 Ala. 185, 50 So. 1002; W. U. Tel. Co. v. Northcutt, 158 Ala. 539, 48 So. 553, 132 Am. St. Rep. 38; Thomas v. State, 206 Ala. 416, 90 So. 295. Decedent was, at the time of injury, a passenger. 10 C. J. 916; Mobile L. & T. Co. v. Therrell, 205 Ala. 553, 88 So. 677; Melton v. B. R. Co., 153 Ala. 95, 45 So. 151, 16 L. R. A. (N. S.) 467; B. R., L. & P. Co. v. O'Brien, 185 Ala. 617, 64 So. 343; Willingham v. B. R., L. & P. Co., 203 Ala. 352, 83 So. 95; Hammett v. B. R., L. & P. Co., 202 Ala. 522, 81 So. 22; Montgomery St. Ry. v. Mason, 133 Ala. 508, 32 So. 261; Montgomery L. & T. Co. v. O'Connor, 204 Ala. 24, 85 So. 384; Mobile L. & R. Co. v. Walsh, 146 Ala. 295, 40 So. 560; Franklin v. Sou. Ry., 196 Ala. 118, 72 So. 11; Sou. Ry. v. Burnett, 6 Ala. App. 571, 60 So. 472. There was no prejudicial impropriety in the conduct of plaintiff and one of the jury. L. & N. v. Holland, 173 Ala. 675, 55 So. 1001; Adams v. Wimbish, 201 Ala. 548, 78 So. 901; Cole v. A. G. S., 201 Ala. 193, 77 So. 719; Veid v. Roberts, 200 Ala. 576, 76 So. 934. Decedent had the right to assume the place at which he was invited to alight from the car was safe. A. G. S. v. Godfrey, 156 Ala. 217, 47 So. 185, 130 Am. St. Rep. 76; B. R., L. & P. Co. v. Anderson, 163 Ala. 72, 50 So. 1021; Watson v. E. T., V. & G., 92 Ala. 325, 8 So. 770; Montgomery v. Ferguson, 207 Ala. 430, 93 So. 4.

BOULDIN, J. This is an action in damages under the Homicide Act, for negligence of defendant resulting in the death of plaintiff's testator. The negligence relied upon is the breach of duty owed by a common carrier to a passenger. The case supported by the plaintiff's evidence may be briefly stated thus:

On Bell street in the city of Montgomery, defendant's street car line crosses over a railroad cut some 30 feet in depth. At the time of the accident the trestlework, supporting the track, was undergoing repairs, and for the time the street cars stopped at either end, and passengers transferred by walking over a public bridge, located north of the trestle, leaving an open space between them several feet wide. The city had erected a barrier from the east end of the bridge to defendant's roadway—the end of the crossties some 2 feet 7 inches outside the north rail. Defendant's roadway was paved as part of the street, extended beyond the barrier some 10 feet, and joined up with the trestle. The break of the cut makes in at an angle from the barrier toward the trestle, touching the pavement between the barrier and the trestle. Here a pedestrian could step directly from the pavement into the cut. This was the place of the accident.

On February 2, 1924, deceased was a passenger on a street car of defendant going west; reached this point at about 6:30 p. m.; the car stopped; he, with some 20 other passengers, proceeded to disembark. On leaving the car, the deceased fell into the cut, receiving injuries from which he died.

[1] On the issue of negligence vel non, plaintiff's evidence tended to show: That the usual stopping place of the car was about a car length, 30 feet, from the trestle; that on this occasion the car came to a stop 8 to 15 feet therefrom; that passengers were invited to alight on the south side of the car at the front, pass across the track, over the street space of some 10 feet, thence onto the bridge; that while they were alighting, about the time deceased stepped off the car, the conductor pulled the trolley, preparatory to the return trip, thus cutting off the lights and leaving the place in darkness—such darkness that passengers coming out of the lighted car could not reasonably see their way of egress; and that deceased so came to his death.

The defendant's evidence tended to show: That the car was stopped at the usual place —a car length from the trestle; that a timber or timbers were across the track between the car and place of danger; that a nearby street light gave such light that a person in the exercise of ordinary care was not endangered; that deceased was familiar with the place; and that he was under the influence of intoxicants.

These defensive matters were controverted. The evidence presented issues of fact, whose solution was for the jury. It readily appears the gravamen of the case made by the plaintiff is one of negligent omission of duty by the carrier toward its passenger in the matter of furnishing a safe place of debarkation.

[2-4] The defenses are: (1) A denial of such failure of duty; (2) that the relation of carrier and passenger, with the duties incident thereto, had ended at the time of the accident; and (3) deceased was guilty of negligence which proximately contributed to his death.

"It is the duty of common carriers of passengers, including street railways, to exercise the highest degree of care in providing reasonably safe and convenient places for the disembarkation of their passengers. Montgomery St. Ry. Co. v. Mason, 133 Ala. 508, 527, 32 South. 261; Mobile, etc., R. Co. v. Walsh, 146 Ala. 295, 40 South. 560; 10 Corp. Jur. 924, § 1348; Id. 944, § 1363. And when a train or car stops at any place other than a regularly appointed station or stopping place, and passengers are there expressly or impliedly invited to alight, it is the carrier's duty to select a place that is reasonably safe and convenient, and it is its further duty, acting through its servants in charge, to know whether the place selected is of such a character. 10 Corp. Jur. 914, § 1340; Id., 939, § 1360; Mobile, etc.,

212 ALA.—41

R. Co. v. Walsh, 146 Ala. 295, 40 South. 560; N. B. Ry. Co. v. Liddicoat, 99 Ala. 545, 13 South. 18. And if, nevertheless, there is danger to an alighting passenger from obstructions, or surface inequalities, or other sources, not known to him and not plainly open to his observation, and of which the carrier's servants are bound to take notice, it is the duty of the latter to warn the passenger of the danger. 10 Corp. Jur. 925, § 1349." Mobile Light & R. Co. v. Therrell, 205 Ala. 553, 555, 88 So. 677, 678.

The above quotation, opinion by Mr. Justice Somerville, states the law with clearness and accuracy. We attempt no further statement. See also, Montgomery Light & Power Co. v. O'Connor, 204 Ala. 24, 85 So. 384.

"Differing in degree, at least, from the rule prevailing in other jurisdictions with respect to the time when the relation between a street railway carrier and a passenger ceases (10 C. J. pp. 625, 626; 4 R. C. L. pp. 1047, 1048, and notes), in this jurisdiction the accepted rule is that the relation is not terminated by the passenger's mere act of leaving the car, 'but continues until he has a reasonable opportunity to leave the car and the roadway of the company,' after the car has reached the station or stopping place to which he is entitled to be carried. Melton v. B. R., L. & P. Co., 153 Ala. 95, 97, 45 South. 151, 16 L. R. A. (N. S.) 467, B. R., L. & P. Co. v. O'Brien, 185 Ala. 617, 621, 64 South. 343." Willingham v. Birmingham Ry., Light & Power Co., 203 Ala. 352, 83 So. 95; Montgomery St. Ry. Co. v. Mason, 133 Ala. 508, 32 So. 261.

The case made by plaintiff's evidence, supported by numerous witnesses, mainly passengers alighting from the car or waiting to board it for the return trip, fully warranted the jury in finding a failure of duty to furnish a safe place for alighting, and that this duty had not ended by termination of the relation of carrier and passenger at the time of the injury. In Willingham v. Birmingham Ry., L. & P. Co., 203 Ala. 351, 83 So. 95, the passenger had alighted in a safe place so far as under control of the carrier, and was going away from the car on a public street, when he was assaulted by defendant's motorman. There was no division of the court on the principle of law stated in the above excerpt. The majority opinion expressly differentiates the case from those presenting the duty to furnish a safe place for debarkation.

[5-7] The duties of carrier to passenger are successive as well as concurrent. The duty to furnish a safe vehicle and to safely operate it ends when the passenger alights and clears the vehicle, no question of injury from subsequent movement arising; but the duty to provide a safe place for alighting arises when the occasion comes for use of such place. To say this duty is ended when the passenger alights and passes from the physical control of the carrier, is to say the

duty ends when it begins—that there is no such duty. Here there were two concurring elements of the danger complained of, viz.: The place for alighting at an unusual point near a dangerous pitfall; and shutting off the lights so as to leave the passengers to make their way from the car in darkness. The place may not have been dangerous in open daylight, but, if rendered so by darkness, its selection raised the duty to give warning or to maintain lights for the like purpose. Both of these elements of danger being under the carrier's control, the duty to the passenger did not end until he had reasonable opportunity to pass beyond the zone of danger created by these conditions. So it matters not whether the passenger was invited to alight in darkness, or it was thereafter made dark by action of defendant's servants, unless the passenger had passed out of danger, or in the exercise of ordinary care would have so discovered the conditions as to avoid the same. There was no error in refusal of the affirmative charge to defendant upon the view that the relation of carrier and passenger had terminated, nor in submitting that issue to the jury upon the conflicting evidence, with proper instructions. This, we think, the law of the case, without regard to any question of the passenger having received a transfer with the view of continuing passage on another car after crossing over the cut on the public bridge. Indeed, it does not seem that fact was material. A transfer is a mere ticket entitling the holder to resume passage. It does not necessarily carry a duty to look out for his personal safety during the interim. Thus, if defendant furnished a safe place to alight and go on his way to the bridge, there would be no duty to conserve his safety while on the public bridge, but it would be resumed when he again presented himself for passage.

[8] Neither was the defendant due the affirmative charge on the plea of contributory negligence. Whether the deceased was under the influence of intoxicants at all, and, if so, whether to such extent as put him, by his voluntary act, in such condition that he failed to exercise that degree of care required under the circumstances, were issues wholly for the jury.

[9] So also touching the familiarity of the deceased with the place. It was for the jury whether his general knowledge of the place was such as to properly impress him with the particular dangers of the moment. If it be true that he had previously transferred at that point, and was familiar with conditions, still, if the car stopped nearer the cut than was the custom, so that his place of alighting was one-third or one-half the usual distance from the point of danger, a fact not known to him, contributory negligence would still be a question for the jury.

He had the right to assume the car had stopped at the usual place. If, so thinking, he took the usual direction, crossing the track toward the bridge at the customary angle in the darkness, it was open to the jury to conclude he was given a false sense of security by the negligence of defendant, which led him to the cut. Such inference finds support in the testimony of Mrs. McKenzie, another passenger, familiar with the place, who testified she ran into the barrier placed by the city.

[10, 11] On the direct examination of defendant's witness Benson, his testimony was adverse to the defendant. On a suggestion of surprise in his testimony, defendant freely examined the witness touching statements recently made contradictory of his testimony on the stand. He denied making such statements, and adhered to his adverse testimony. Defendant offered to show surprise or entrapment in that in preparation for trial, the witness had stated the facts known to him as opposed to his evidence, and offered to prove such contradictory statements by other witnesses. This evidence was refused. In this the trial court followed the long-established rule in Alabama. 2 Brick. Dig. p. 547, §§ 98, 99; 3 Brick. Dig. p. 828, §§ 107, 110; Bradford v. Bush, 10 Ala. 386; Campbell v. State, 23 Ala. 44; Griffin v. Wall, 32 Ala. 149; Hemingway v Garth, 51 Ala. 530; Southern Bell T. & T. Co. v. Mayo, 134 Ala. 641, 33 So. 16; Blackmon v. Central of Ga. Ry. Co., 185 Ala. 635, 64 So. 592; Jebeles-Colias Conf. Co. v. Booze, 181 Ala. 456, 62 So. 12; Thomas v. State, 117 Ala. 178, 23 So. 665.

The rule forbidding the calling of other witnesses to prove contradictory statements by one's own witness in case of surprise has been criticized by eminent courts and text-writers. We are asked in an earnest argument to depart therefrom. The principle upon which is based the common-law rule that a party should not be permitted generally to impeach the credibility of his own witness is one of sound policy. We are not impressed with the views sometimes expressed that such testimony is allowable to contradict rather than to impeach the witness; but rather with the weight of authority holding that such testimony can be regarded as directed only to the credibility of the witness. It is everywhere so treated in dealing with testimony of an opposing witness. Hearsay declarations, not otherwise admissible, cannot be substantive testimony of the facts stated. Their admissibility for any purpose must be rested on the ground that they weaken the probative force of the testimony given on the stand. The proffered evidence is directed toward the witness himself. The witness may be contradicted by any legal evidence that the facts are not as he deposes, but it is inapt to so designate

evidence of statements out of court at variance with those on the stand. The real basis of criticism to the rule here obtaining is the disadvantage in which a party is placed by surprise, or the fraud of an artful and designing witness. This situation has been many times considered by this court, as well as in other states; and is made the basis for permitting a free cross-examination of the party's witness, either by way of refreshing his recollection, or of showing surprise and hostility. Thomas v. State, 117 Ala. 178, 23 So. 665; White v. State, 87 Ala. 24, 5 So. 829; Hemingway v. State, 51 Ala. 530; Gandy v. State, 81 Ala. 68, 1 So. 35; Campbell v. State, 23 Ala. 44.

In the last-cited case it was left an open question whether the rule should be extended to let in evidence of other witnesses to show contradictory statements. Later cases have refused to so extend it. A full review of the authorities, pro and con, setting forth the reasons supporting the views of different courts and text-writers, will not be here undertaken. Most of the underlying principles have been questioned in one way or another. Suffice to say that, in the absence of statute, the prevailing rule in England and America is in harmony with ours. See note, Ann. Cas. 1914B, 1125 to 1135; note, 82 Am. St. Rep. pp. 57 to 63; note, 60 Am. Dec. 749 to 752; note, 21 L. R. A. 418 to 425; Jones on Ev. (2d Ed.) §§ 853, 854; Wigmore on Ev. §§ 902 to 908; 28 R. C. L. pp. 644 and 645; 40 Cyc. p. 2691 (c), p. 2693 (VII).

It appears, however, the tendency of modern authority is toward letting in testimony of other witnesses to prove contradictory statements in cases of surprise or entrapment. A study of such authorities discloses a want of harmony in the method to be pursued, and the proper limitations of the rule. Either rule is subject to abuses. Not being an open question in Alabama, we venture no opinion as to which rule is, on the whole, most promotive of justice. We are clearly of the opinion that no such evil results have ever obtained, or are likely to obtain, in Alabama, from our long-established practice, as to warrant us in now overturning the judgments of courts which have followed the law as written. If deemed of sufficient importance, any change should be made by statute, as in some other states, thus giving full notice, and carefully limiting and defining the changes so wrought.

[12] Defendant made a motion for a new trial for alleged misconduct of plaintiff and one of the jurors trying the cause, as follows:

"(45) For that this case was given to the jury for their deliberation and consideration, to wit, between 10 and 11 o'clock p. m. Wednesday night, April 30th, and said jury deliberated upon the same until between, to wit, 1 and 2 o'clock a. m. Thursday morning, May 1st, when they were permitted by the sheriff or deputy sheriff of Montgomery county to cease said deliberations for that night and go home and come back the next morning, and, upon said jury being permitted so to do, one of said jurors, upon preparing to leave the courthouse, asked the plaintiff if he was going home, and if he (the said juror) might ride with him, and plaintiff replied in the affirmative, and said juror rode away from the courthouse with plaintiff in plaintiff's automobile, or in the same automobile with plaintiff."

Defendant's evidence tended to support the motion. Plaintiff introduced evidence by affidavits controverting the averment that the juror rode with the plaintiff in the car. On this issue of fact, heard in part on oral evidence, the finding of the court will not be disturbed. Adams Hdwe. Co. v. Wimbish, 201 Ala. 548, 78 So. 902.

[13] In avoidance of this finding, the defendant takes the point that the ground of the motion is sustained upon proof that plaintiff furnished the car and caused the juror to be transported therein by his son, and in company with plaintiff's wife, a beneficiary in the recovery. This upon the ground of agency—that one who does an act by another does it himself. This is a well-known rule in cases involving the doctrine of respondeat superior.

The alleged wrongful conduct here charged has two elements, or grounds, if we so term it. One is the intimate personal contact between the party and the juror while the recipient of a favor. As to this the doctrine of agency has no application. The plaintiff was not called upon to defend against the personal contact and association of the juror with any other person than the plaintiff. Another element of the charge is giving and accepting transportation under the conditions stated. Plaintiff's evidence did not controvert the averments of the motion in this regard.

The evidence reasonably established the following conditions: The jurors, after deliberating some hours without reaching a verdict, were, at about 2 o'clock a. m., instructed to disperse and go home until next morning. On leaving the courtroom, the juror openly, and in the presence of representatives of defendant company in attendance upon the trial, asked plaintiff if he was going home; plaintiff answered in the affirmative; the juror then asked to ride with him, and plaintiff agreed; they then walked on out of the courthouse to plaintiff's car, when the juror got in the car and rode away. The inference is fairly drawn that plaintiff's son drove the car and carried the juror from the city of Montgomery to his home, some 7 miles in the country. It does not appear that plaintiff was asked to or did go out of his way, incur any extra expense, labor, inconvenience, or delay.

[14] The incident involves conduct of both

a party and a juror. The law is very jealous of any conduct of parties, or those who represent them, tending to show an effort to influence the verdict of a jury. Voluntary and 'unusual attentions and courtesies are often deemed such misconduct. The law does not stop to inquire whether the wrongful conduct has influenced the jury. If it evinces a purpose so to do, this is such corrupt practice that, as a matter of public policy in the clean administration of justice, the party will be penalized by setting aside his verdict. K. C., M. & B. R. R. Co. v. Phillips, 98 Ala. 159, 13 So. 65; Craig v. Pierson Lbr. Co., 169 Ala. 548, 53 So. 803; L. & N. R. R. Co. v. Turney, 183 Ala. 398, 62 So. 885; New York Life Ins. Co. v. Turner, 210 Ala. 197, 97 So. 687; Ex parte Alabama Fuel & Iron Co., ante, p. 1, 101 So. 642.

[15] The conditions here shown do not import any voluntary seeking opportunity to do the juror a favor. The request was made by the juror. This fact would not excuse a manifest entering into relations wrongful within themselves. The act must, however, be viewed in the light of conditions. A juror released at 2 o'clock in the morning, under the necessity to find transportation home or lodgment at that hour, makes a request which, but for his relation as a juror, was in no sense unusual, but an ordinary neighborly act, involving no expense. To refuse it was to manifest an uncivil indifference, or make explanation questioning the conduct of the juror.

The request of the juror should be viewed in the same light. While it may evince an absence of a keen sense of propriety in avoiding all grounds of suspicion, it should be viewed with a just regard to the circumstances. The right-minded man, judge or juror, expects to return ordinary courtesies in kind, resents the thought of so doing by inflicting a wrong upon another, and assumes as of course that he is not expected so to do.

[16] We do not find here that misconduct on the part of plaintiff, or that corruption or bias on the part of the juror, which, in all fairness, calls for setting aside the verdict. The solemn findings of a jury, selected according to law and rendered upon oath, should be disturbed only for substantial cause. 2 Thompson on Trials (2d Ed.) § 2565; 29 C. J. p. 805 (b); Ford v. Holmes, 61 Ga. 419; Hilton v. Southwick, 17 Me. 303, 35 Am. Dec. 253.

In the court's oral instruction to the jury he defined the degree of care which the law imposes upon a carrier toward its passenger in language approved by this court. Mobile L. & R. R. Co. v. Hughes, 190 Ala. 215, 224, 67 So. 278; Southern Ry. Co. v. Burgess, 143 Ala. 364, 42 So. 35.

What we have said touching the tendencies of the evidence, and the principles of law applicable thereto, is sufficient to indicate the defects in the charges refused to defendant. We have examined each of them, and find no error in their refusal. The law of the case was covered by the oral charge and given charges for defendant. There was no error in overruling motion for new trial upon the ground that it was not supported by the evidence, or upon the ground that the verdict was excessive.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.