48 So.2d 873

### PARKER v. BIRMINGHAM ELECTRIC CO.

#### 6 Div. 995.

Supreme Court of Alabama.
Nov. 24, 1950.

Taylor, Higgins, Windham & Perdue, of Birmingham, for appellant.

Lange, Simpson, Robinson & Somerville, of Birmingham, for appellee.

490

STAKELY, Justice.

This is an appeal from a judgment of nonsuit entered in the court below upon motion by the plaintiff because of adverse rulings of the trial court upon pleadings. The suit is for personal injuries and damages sustained by the plaintiff as a proximate result of alleged negligence on the part of the defendant or the defendant's servant, agent or employee acting within the line and scope of his employment.

The original complaint contained three counts designated as counts 1, 2 and 3.

Demurrers to these counts respectively were sustained by the court with leave of the court to plaintiff to amend the complaint by adding counts 4, 5, 6 and 7 to which demurrers were filed. The court thereupon sustained the demurrrers to counts 4, 5, 6 and 7.

On account of the aforesaid adverse rulings the plaintiff moved the court to enter a judgment of nonsuit as aforesaid. The motion was granted by the court and a judgment was rendered discharging the defendant and rendering judgment against the appellant. The purpose of this appeal is to review the action of the trial court in sustaining demurrers to counts 6, 7 and 3, these being the rulings which are here assigned as error.

We think that the case can be understood by a discussion of the allegations of count 6 although there is some variation from these allegations in counts 7 and 3, which we will hereinafter point out. Although count 6 will appear in the report of the case, we summarize the averments of this count as follows. After averring that defendant was engaged in the business of common carrier of passengers by motor bus and that plaintiff was a passenger for a reward on one of the defendant's motor busses, it is alleged that the bus was stopped at a certain point in order to permit plaintiff to alight therefrom. The conditions existing at the point where the bus was stopped and where plaintiff was invited and permitted to alight are described in the count by appropriate averments as (1) it was dark and it was raining, (2) after plaintiff alighted her position and the position of the bus was such that she could not see traffic approaching along the public highway from the east, (3) the place where she alighted was beside a four-lane super highway which was muchly traveled by vehicles going in both directions both day and night and which made the highway at this point dangerous to pedestrians and (4) at the place where she alighted there was no intersecting street, avenue or highway to the right of the super highway. It is alleged that all of the foregoing facts and conditions were known to the operator of defendant's bus, acting within the line

and scope of his employment as such. It is then averred that with knowledge of all the facts the bus operator negligently signaled or directed the plaintiff to proceed across the super highway in front of the bus. It is then alleged that plaintiff relied upon the signal and direction so given to her by the operator of the bus and proceeded across the super highway. It is further averred that as she cleared the far (south) side of the bus she collided with a motor vehicle which was proceeding in a westerly direction along the super highway toward Bessemer, passing the standing bus. The count then alleges that as a proximate consequence thereof the plaintiff sustained certain injuries and damages. The count concludes with averments to the effect that all of plaintiff's injuries and damages were caused as a proximate result of the negligence of the operator of the bus while acting within the line and scope of his employment for the defendant, "in negligently directing or negligently signalling plaintiff to cross in front of the bus into the motor vehicle traveling on the super highway toward Bessemer."

■ It is true that the relation of passenger and carrier does not terminate when the passenger leaves the vehicle or carriage but continues until he has had reasonable opportunity to leave the car and the roadway of the company after the vehicle reaches the stopping place to which the passenger is entitled to be carried. Mobile Light & R. Co. v. Therrell, 205 Ala. 553, 88 So. 677; Alabama Power Co. v. Hall, 212 Ala. 638, 103 So. 867. Further if there is a danger to an alighting passenger from obstructions or other sources not known to the passenger and not plainly open to his observation and of which the carrier's servant is bound to take notice, it is the duty of the latter to warn the passenger of the danger. Mobile Light & R. Co. v. Therrell, supra. Further it is negligence for the operator of a motor bus to direct an alighting passenger to proceed into a dangerous situation, known to the operator and which the alighting passenger is unable to discover on account of darkness, obstruction to

view or other special circumstances. Alabama Power Co. v. Hall, supra.

■ A "complaint counting upon a breach of the carrier's duty to stop at a reasonably safe and convenient place for an invited disembarkation of its passengers must either charge in terms that it stopped at a place that was not reasonably safe or convenient, or else it must state facts from which that conclusion follows as a matter of law"; and if a count contains averments of fact which are equivocal and which, although tending to show that the place was not reasonably safe, do not establish an unsafe condition for alighting conclusively and as a matter of law, the count is subject to demurrer unless it contains the further averment in express terms that the place of alighting was not reasonably safe. Mobile Light & R. Co. v. Therrell, supra [205 Ala. 553, 88 So. 679].

We think it can be fairly stated that there is nothing in the count to show that the plaintiff alighted at any other point than her true destination or that the stop at which she alighted was not a regular and safe stop for passengers to alight, other than possible danger from traffic on the super four-lane highway accentuated perhaps by the fact that it was raining and dark. In fact there is no allegation that indicates that the place of alighting was not on the public highway or that defendant was not authorized to discharge passengers on the highway. We think it should further be said that the danger to be inferred from the allegations of the count is not a danger caused by the condition and place of alighting, but only the danger to plaintiff in attempting to cross the super four-lane highway to get to the other side. In other words, there is no allegation that there was any danger surrounding the place of alighting if the plaintiff had remained there and had waited for the bus to proceed before attempting to cross the highway. There is no allegation that she was injured by any subsequent movement of the bus while at the place of alighting or that there was any trap, pitfall, unevenness of ground or

other condition which would have rendered the landing place unsafe.

In the case of Willingham v. Birmingham Ry., L. & P. Co., 203 Ala. 351, 83 So. 95, 97, the suit was against the street railroad carrier for assault and battery committed by the motorman of the street car upon a passenger after the passenger had alighted and after he had taken "a step or two, at least" from the car. The allegation was that plaintiff was assaulted by the motorman while he was a passenger of the defendant. This was the express allegation of each count and therefore the question as to whether he was actually a passenger at the time of the assault arose on the proof and not on the pleading. This court, however, held that the relationship of carrier and passenger had terminated when the plaintiff alighted safely from the car onto the street, even though he had proceeded only a step or two therefrom. The fact that there was evidence that before such alighting from the car the motorman used offensive language did not prevent termination of the relationship of carrier and passenger. The court distinguished the case of Alabama City, G. & A. Ry. Co. v. Sampley, 169 Ala. 372, 53 So. 142, on the ground that there was evidence in the Sampley case that the defendant's conductor attacked the plaintiff before he alighted from the car.

In the foregoing case the court cited with approval the cases of Melton v. Birmingham Ry., L. & P. Co., 153 Ala. 95, 45 So. 151, 16 L.R.A.,N.S., 467, and Birmingham Ry., L. & P. Co. v. O'Brien, 185 Ala. 617, 64 So. 343, cases cited by appellee in the case at bar, distinguished those decisions and held them inapplicable. The court said, "The general rule applicable to carriers having exclusive control or occupation of its tracks, stations, and grounds for the reception and discharge of passengers cannot, in the nature of things, be applicable to a street railway carrier which receives and discharges its passengers in a public highway."

The court in the Willingham case, supra, recognized that the relationship of carrier and passenger " 'continues until he has a reasonable opportunity to leave the car and the roadway of the company,' after the car has reached the station or stopping place to which he is entitled to be carried."

In the case of Hammett v. Birmingham Ry., L. & P. Co., 202 Ala. 520, 81 So. 22, 24, the plaintiff was injured after alighting from the streetcar into the street by being struck by a motorcycle. The case was submitted to the jury and a verdict was rendered for the defendant, the street railway company. Therefore, there was not involved in that case the question of whether the pleading stated a cause of action or the evidence was sufficient to carry the case to the jury in view of the fact that the plaintiff had the benefit of a verdict and decision by the jury and appealed from the judgment based thereon. The court made the following pertinent observation.

"It is the duty of the street railroad carrier to provide a reasonably safe place for the landing of its passengers, as explained in Montgomery Street Ry. Co. v. Mason, 133 Ala. 508, 32 So. 261, and other of our cases; but this rule has no reference to independent agencies operating in the street such as the motorcycle mentioned in plea 2. The carrier is no more responsible for them than is the passenger. * * *

"Defendant's charge 3 was clearly correct. The carrier's full duty in the absence of special circumstances of which there is no intimation in this record, is performed when the passenger is safely deposited on the ground. If afterwards the passenger walks into danger or harm overtakes him by reason of the intervention of an independent agent the carrier cannot be held for that."

In Alabama Power Co. v. Hall, 212 Ala. 638, 103 So. 867, 869, the court in discussing the distinguishing features from the circumstances in the Willingham case, supra, said: "In Willingham v. Birmingham Ry., L. & P. Co., 203 Ala. 351, 83 So. 95, the passenger had alighted in a safe place so far as under control of the carrier, and was going away from the car on a public street, when he was assaulted by defendant's motorman. There was no division of the court on the principle of

law stated in the above excerpt. The majority opinion expressly differentiates the case from those presenting the duty to furnish a safe place for debarkation."

Thus it appears from the foregoing decision the court in deciding the Willingham and Hammett cases, did not depart from the general principle that the carrier must furnish a reasonably safe place for the passenger to alight and must, generally speaking, afford the passenger a reasonable opportunity to leave the carrier's roadway or station in safety. The distinction is that the carrier does not fail to provide a reasonably safe place to alight if the passenger is lawfully discharged in the public street and if the danger surrounding the alighting or place of alighting arises only out of the movement of such an independent agency as automobiles, motorcycles or other traffic vehicles, or such an independent agency as assault or injury by third persons over whom the carrier has no control.

In order for count 6 to be held good the facts alleged must as a matter of law and unequivocally show that defendant did not provide a place reasonably safe for alighting. The allegations of fact are that when the plaintiff stepped to the ground, it was dark and raining, that plaintiff could not see traffic approaching from the east, that the highway was a four-lane super and muchly used by motor vehicles in each direction. The conclusion is then alleged that "said highway at the point where plaintiff was caused to alight was highly dangerous to pedestrians." This conclusion construing the allegations against the pleader, is not equivalent to an allegation that the place of alighting is a place unsafe for passengers alighting from the bus. A pedestrian is defined as a "walker, one who journeys on foot." Webster's New International Dictionary. It must be kept in mind that the whole basis of the plaintiff's cause of action, if any, must be rested on the duty growing out of the relationship of carrier and passenger. If the plaintiff in the present case is not a passenger at the time of injury, then there can be no right of recovery. If the place at which the plaintiff was caused to alight was highly dangerous to pedestrians, this could mean that it was dangerous to one walking along the street, because such person might be struck by another vehicle or through the intervention of an independent agency for which the carrier cannot be held liable. Authorities, supra. In other words the word pedestrian creates a field of operation which could be larger and different from that on which liability can be predicated. "One who alights from a street car upon the street and is in safety from any contact or collision with the street car ceases to be a passenger, and, as regards injury sustained in tripping over some object or being struck by another vehicle, has the status of an ordinary pedestrian." Wullbrandt v. City of Seattle, 196 Wash. 645, 84 P.2d 123, 125.

Other than the allegation that the bus operator with the knowledge that plaintiff could not see traffic approaching from the east, negligently signaled or directed her to cross in front of the bus, the count does not show that the defendant failed to provide a place reasonably safe for alighting. The signal or direction of the operator was not alleged to be a part of his duty and within the line and scope of his employment as servant, agent or employee of the defendant and was not binding on the defendant, because the relationship of carrier and passenger had terminated. Willingham v. Birmingham Ry., L. & P. Co., supra. We consider the allegations of fact in the count to be equivocal and this renders the count defective, especially in view of the fact that the only danger actually alleged is the danger from the independent agency of vehicles normally proceeding along the highway.

It may be added that the signal by the operator that plaintiff might walk in front of the bus in safety does not create a danger not readily observable to the passenger. This count did not allege otherwise and it may be assumed that the passenger, as an ordinarily intelligent and prudent person, would have knowledge that the super highway might have traffic on it and that it was dangerous to go

494

across the street without exercising diligence to avoid the danger. We think that count 6 does not sufficiently allege a breach of duty by the defendant in failing to provide a reasonably safe place for the plaintiff to alight and therefore no cause of action is stated in the count against the defendant.

Could the allegations of the count be construed to mean that the bus operator had authority from the bus company to signal or direct one who had alighted from the bus under the circumstances as alleged in the count? It is not so argued in briefs. Construing the allegations against the pleader, we do not think that the authority of the bus operator is alleged to the extent that he was so authorized by the company.

Count 3 is very similar to count 6. In fact the allegations of the two counts are practically identical except for certain averments in count 6 which were added to averments contained in count 3. If count 6 is bad we think it can be safely said that count 3 must necessarily fall.

Count 7 is identical with count 6 except for the additional allegation enclosed in parenthesis as hereinafter set out. "And plaintiff avers that all of her said injuries and damages were caused as a proximate result of the negligence of the servant, agent or employee of the defendant, in charge of the operation and control of said bus, acting within the line and scope of his employment as such, (in negligently failing to move said bus in a forward direction so as to allow plaintiff to observe traffic approaching from an easterly direction and) in negligently directing and negligently signaling plaintiff to cross in front of said bus into said motor vehicle traveling on said highway toward Bessemer."

The demurrer to count 7 invoked the same principles which were applied to count 6. For example count 7 fails to show that the relationship of carrier and passenger still existed at the time of the alleged injury, but on the contrary showed that such relationship had terminated and, therefore, the defendant was under no duty insofar as the giving of signals to plaintiff was concerned or failing to move the bus in a forward direction. The signal referred to as having been given by the operator was clearly a gratuitous act on his part and outside the line and scope of his employment as servant, agent or employee of defendant. Authorities, supra. The defects pointed out in count 6 were clearly present in count 7 and since the demurrer to count 6 should have been upheld, the demurrer should also have been sustained to count 7.

Upon a careful consideration of the matter we do not think that the trial court was in error and his rulings should be sustained.

Affirmed.

FOSTER, LAWSON and LIVINGSTON, JJ., concur.