# White *v.* The State.

*Indictment for Burglary and Grand Larceny.*

1. *Contradicting or impeaching party's own witness.*—While a party can not, as a general rule, contradict or impeach his own witness, he may, when put at disadvantage by an unexpected answer, or for the purpose of refreshing the memory of the witness, ask him whether, at a certain time and place, he has not made other statements inconsistent with his testimony as just given.

2. *Same.*—The general rule, which denies to a party the right to impeach his own witness, applies to a witness who is summoned and examined by and for each party; that is, the party who first introduces him, can not impeach him when introduced and examined by the other.

FROM the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

The indictment in this case contained two counts, one charging the defendant with burglary, and the other with larceny from a dwelling-house; the house broken and entered, and the goods stolen therefrom, being alleged to be the property of Emma Harris. On the trial, as the bill of exceptions shows, the State introduced said Emma Harris as a witness, and she testified to the burglary and larceny from her house; stating, also, that she found some of the stolen articles, a few days afterwards, in the defendant's house, and the others in the possession of one Gertrude Loyd. "Said witness was asked, on cross-examination, if she did not go to the house of Gertrude Loyd, a few days before the meeting of the grand jury, and try to induce her to false-witness against the defendant; which question she answered in the negative." The defendant afterwards introduced said Gertrude Loyd as a witness, and asked her, "whether Emma Harris had not gone to her house, a few days before the meeting of the grand jury, and said something about getting

[White v. The State.]

her to false-witness against the defendant; and the witness answered in the negative." The defendant's attorney then asked the witness: "Did you not tell me, here in this court-room, a few minutes before the trial, that Emma did come to your house, a few days before the meeting of the grand jury, and say something about getting you to false-witness against the defendant?" The solicitor objected to this question, "on the ground that a party can not impeach his own witness." The defendant's attorney then stated, "that he expected the witness to answer in the affirmative." The court sustained the objection to the question, and the defendant excepted.

The State introduced as a witness Catherine White, who was the mother of the defendant, and who testified that the defendant brought home the articles the morning after the burglary. The witness was then turned over to the defendant, and her attorney asked the court, "whether he had the right to examine the witness then as his own, or must wait until the State had rested its case. The court said, 'You may do either;' and the defendant's attorney answered, 'Then I shall do so now.'" The testimony of the witness, on examination by the defendant's counsel, is then stated; among other things, "that Emma Harris is a woman of bad reputation, and witness would not believe her on oath." The defendant's counsel, in his argument before the jury, "comparing the relative weight to be attributed to the testimony of Emma Harris and Catherine White, said that the defendant had impeached Emma Harris, but the State had not even sought to impeach Catherine White. The solicitor replied, in his argument to the jury, that, as matter of law, he could not impeach her, as she was his own witness. The defendant's attorney objected, under the circumstances, to this proposition being stated as a rule of law, on the ground that said Catherine White, being a witness for the defendant as well as for the State, could be impeached. The court overruled the objection, and allowed the proposition to be stated; and the defendant thereupon excepted."

JNO. E. MITCHELL, for appellant, cited Campbell v. State, 23 Ala. 77; Hemingway v. Garth, 51 Ala. 530; 1 Greenl. Ev., §§ 444–47; 2 Phil. Ev. 450; Wright v. Beckett, 1 M. & W. 414; Barker v. Bell, 46 Ala. 217.

W. L. MARTIN, Attorney-General, for the State.

[White v. The State.]

McCLELLAN, J.—A party may ask his witness, for the purpose of refreshing his memory, or of showing that he has been put at a disadvantage by unexpected evidence, whether at a certain time and place he has not made certain statements inconsistent with his testimony on the stand, even though the admission of such inconsistent statements will injuriously affect the witness' credibility with the jury. *Campbell v. State*, 23 Ala. 77; *Hemingway v. Garth*, 51 Ala. 530; Roscoe's Cr. Ev. 103; 1 Greenl. Ev. § 444. While this can not be done, when the purpose and only effect of such evidence is to impeach the witness (*Gandy v. State*, 81 Ala. 68); yet, the mere fact that the party expects the witness to admit the contradictory statements is not sufficient to show that the purpose and sole effect of the examination is to impeach the witness, or to justify the exclusion of the testimony. Therefore, the defendant's witness, Lloyd, having, in reply to defendant's counsel, sworn that the State's witness, Harris, had not attempted to get her to "false-witness" the defendant, proper predicate having been laid for the impeachment of Harris, the court should have allowed counsel to ask Lloyd, if she had not, at a given time and place, stated to him that such attempt was made. The refusal of the court to allow this question to be put and answered was error, for which the case must be reversed.

"When a party offers a witness in proof of his cause, he thereby, in general, represents him as worthy of belief;" and he will not be permitted to impeach the witness' general reputation for truth, or otherwise show that he is unworthy of credit. The ground upon which the right to impeach his own witness is denied to a party—the reason of the rule—would apply equally to the witness after he had been examined and discharged by the one, and introduced by the other party; and would extend throughout the particular case. For such party to attack the credibility of the witness, in that case, even after he had become the witness of his adversary, would be inconsistent with his implied assurance of his worthiness of belief. And while a party may show that the fact is not as it was testified to by his witness, either during the time he continued to be so, strictly speaking, or after he had been offered as to new matters by the other party; it can not be said that, at any time, or under any circumstances, in that trial, he has a right to impeach him. As we have shown above, for certain purposes, other than impeachment, a party may show, by the witness himself, inconsistent

[Tolbert v. The State.]

statements; but, even with respect to these, he is not permitted to assume an attitude repugnant to his representation of general credibility. In the usual sense of the term, therefore, the statement of the solicitor, that the law did not allow him to impeach the witness, Catherine White, was a correct exposition of the rule, and a proper argument in reply to the position taken by defendant's counsel.—1 Gr. Ev. § 442.

Reversed and remanded.