[Criminal No. 436.   Filed March 5, 1918.]

[171 Pac. 137.]

## STANLEY PRIESTLY, Appellant, v. STATE, Respondent.

1. JURY — IMPARTIALITY — DISCRETION OF TRIAL COURT.—Whether the existence of a state of mind on the part of a juror is such as will prevent him from acting with impartiality is ordinarily a matter which must be left largely to the wise discretion of the trial court.

2. CRIMINAL LAW—SELECTING JURORS—REVERSIBLE ERROR.—Where the exercise of the trial court's discretion in determining the impartiality of jurors is clearly erroneous, the appellate court is bound to interfere.

   [As to improper refusal of court to sustain challenge to juror for cause as warranting reversal, where injured party exhausts his peremptory challenges, see note in Ann. Cas. 1915D, 97.]

3. CRIMINAL LAW—COMPETENCY OF JURORS—SERVICE IN SAME CASE.— In prosecution for an unlawful sale of intoxicating liquor, where the principal defense was the incredibility of the testimony of three detectives, whose testimony was relied on for a conviction and the credibility of defendant's impeaching witness, it was reversible error to compel defendant to select a jury from a panel, including five jurors who had a day or two before rendered a verdict of guilty against another defendant, charged with an illegal sale, in which the defense was the same, and in which the testimony of the same three detectives was relied on for a conviction, in view of Constitution, article 2, section 1, providing that a frequent recurrence to fundamental principles is essential to the security of individual rights and the perpetuity of free government, and section 24, providing that in criminal prosecutions the accused shall have the right to trial by an impartial jury; defendant being forced, having exhausted his peremptory challenges, to accept a trial jury composed of a portion of the jury which sat in the first case.

4. JURY—SELECTION—DUTY OF COURT.—It is the duty of the trial judge to see that an unbiased, unprejudiced, and impartial jury is selected in every case.

APPEAL from a judgment of the Superior Court of the county of Yavapai. Frank O. Smith, Judge. Reversed and remanded, with directions.

Mr. Robert E. Morrison and Mr. Allen Hill, for Appellant.

Mr. Wiley E. Jones, Attorney General, and Mr. Geo. W. Harben and Mr. R. W. Kramer, Assistant Attorneys General, for the State.

FRANKLIN, C. J.—Stanley Priestly was adjudged guilty of a misdemeanor, and appeals. He was charged with selling intoxicating liquor to one C. J. Cooper, and asks a reversal of the judgment of conviction mainly upon the ground that he was not accorded a fair and impartial trial in the superior court.

The panel from which a jury was to be selected to try his case contained five men who, a day or two previously, had sat as jurors and rendered a verdict of guilty against the defendant in the case of *State* v. *Larry Duff*, in which case the defendant was charged with selling intoxicating liquor to one R. H. Bryant. These men, Cooper and Bryant, are detectives, and, together with one S. E. Terry, were employed by Yavapai county to obtain evidence against those suspected of violating the liquor law. In this business Cooper, Bryant, and Terry were working together. It was on the testimony of these three detectives that the state relied for a conviction in each case. In the case of *State* v. *Duff*, the testimony of the prosecuting witness, Bryant, was corroborated by the testimony of Cooper and Terry, and in the case of *State* v. *Priestly*, the testimony of the prosecuting witness Cooper was corroborated by the testimony of Bryant and Terry. The main, if not the sole, defensive matter in both of these cases was the incredibility of the testimony of these three detectives, Bryant, Cooper, and Terry, and the credibility of the impeaching witnesses for the defendant. Except the names of the defendant, the evidence in each case was substantially the same and from the mouths of practically the same witnesses. According to the testimony, both Duff and

Priestly were working as bartenders for Bob Birch in his place of business on Montezuma Street in the city of Prescott. The character of Birch's establishment became an important issue in each case, and was the subject of a mass of testimony *pro* and *con.* The testimony for the prosecution discloses that each of the defendants sold intoxicating liquor disguised in ginger ale; that it was the plan or scheme of Birch and these defendants, concocted by them to evade the law, to dispose of intoxicating liquor in this kind of a disguise. The character of the place in which these defendants were thus employed, the kind of persons who frequented there and patronized it, and the conduct of the employees and such persons thereabouts, all this was gone into by the prosecution with much detail of circumstance: In each case, to throw light upon the particular charge being tried and to corroborate the testimony given to prove the specific sale for which a conviction was asked at the hands of the jury, other sales of a similar nature were testified to by the three detectives. So connected and mingled were these offenses and the circumstances related by the witnesses that the trial of the case of Duff was practically a trial of the case of Priestly. Substantially the only difference in the two cases was the application of practically the same testimony by practically the same witnesses to different defendants. The conflict in the testimony for the state and that for the defendant in each case was sharp. The defensive matter in both cases was almost wholly upon the weight and credibility to be given by the jury to the testimony of the respective witnesses. Timely exception was made to the disqualification of these five jurors to be upon the panel, and they were each challenged for cause. Counsel for defendant put upon the record before the trial court with clearness and in detail the similarity of the case of *State* v. *Duff*, which these jurors had tried, with the case of *State* v. *Priestly*, the trial of which they were entering upon. These jurors, however, notwithstanding the similarity of the cases and their conviction in the Duff case upon practically the same evidence from the mouths of the same witnesses, were each emphatically of the opinion, in answer to questions put to them, that their knowledge of the Duff case, together with their verdict under oath, would not influence them against Priestly, but that each could give Priestly a fair and impartial trial relieved from any conviction they may have enter-

tained in the Duff case. The challenges for cause were each overruled, and, after exhausting his peremptory challenges, appellant, Priestly, was forced to accept on the panel for the trial of his case a portion of the jury who had theretofore sat upon the previous case against Duff.

The Declaration of Rights in the Constitution of Arizona, article 2, section 24, provides:

"In criminal prosecutions, the accused shall have the right . . . to have a speedy trial by an impartial jury."

This constitutional guaranty to persons accused of crime, that they shall have a fair trial by an impartial jury, inures to the benefit of every accused, irrespective of his guilt or condition in life. Whether the existence of a state of mind on the part of the juror is such as will prevent him from acting with entire impartiality is ordinarily a matter that must be left largely to the wise discretion of the trial court. But when the exercise of such discretion in a given cause appears to be clearly erroneous under well-settled principles of law, the appellate court is bound to interfere.

The first admonition found in our Constitution, article 2, section 1, is that:

"A frequent recurrence to fundamental principles is essential to the security of individual rights and the perpetuity of free government."

The benign policy of the law that causes shall be submitted to tribunals indifferent as between the parties must not be frittered away in exposition, nor the operation of so just and fundamental a principle be nullified in the practical administration of justice, however happy the breach in its observance may appear to those in any particular instance wherein a conviction would appear justifiable to such, though this fundamental right had been invaded. The right of trial by jury is justly dear to the American people. Our fathers brought the right to this country. They knew that men accused of crimes had been broken upon the wheel after being tortured into a confession at the rack. They and their forbears had experienced the practices of the Star Chamber and verdicts of guilty at the "Bloody Assizes" by a packed jury, with the brutal and odious Jeffreys upon the bench to serve, not justice, but a monarch ambitious for autocratic power. With these horrors fresh in mind, or not in a remote historical sequence, it is not to be wondered at that the basic

principle sounded in the Great Charter as the "bulwark of
English liberties" has become the very warp and woof of our
institutions. That as a people we have watched with jeal-
ousy and deep concern any tendency to encroach upon or im-
pair any of the essential elements of the trial by jury, viz.,
number, impartiality, unanimity. We know the blood and
treasure it has cost to get and keep this birthright of every
American, of every free man. Of the suffering and ignominy
that has been endured for the want of it; of the evils tyranny
and the lust of power have visited upon the weak and help-
less who were without its protecting aegis. Upon occasion,
as individuals, we may feel some of that indifference to the
sacredness of this institution which a long-continued posses-
sion and use are not unlikely to beget, and in such a mood
speak half mockingly of the endearing words "bulwark,"
"palladium," etc., with which this great humane right has
been enshrined in our language, to look upon such as mere
ebullitions fitted for a Fourth of July oration. But, after
all, each realizes the great importance of the trial by jury
and the necessity for preserving it in its purity and dignity
with none of its substantive attributes impaired.

I shall advert to the case of *State* v. *Holt*, 90 N. C. 749, 751,
47 Am. Rep. 544, 546, 547, for some observations of eminent
men upon the subject. Said MERRIMON, J.:

"Judge Story, in his Commentaries on the Constitution,
thus points out its great purpose and the ends it subserves:
'Par. 1780. The great object of a trial by jury in criminal
cases is to guard against a spirit of oppression and tyranny
on the part of rulers, and against a spirit of violence and
vindictiveness on the part of the people. Indeed, it is often
more important to guard against the latter than the former.
The sympathies of all mankind are enlisted against the re-
venge and fury of a single despot, and every attempt will be
made to screen his victims. But how difficult is it to escape
from the vengeance of an indignant people, roused to hatred
by unfounded calumnies, or stimulated to cruelty by bitter
political enmities, or unmeasured jealousies! The appeal for
safety can under such circumstances scarcely be made by in-
nocence in any other manner than by the severe control of
courts of justice, and by the firm and impartial verdict of a
jury sworn to do right, and guided solely by legal evidence
and a sense of duty. In such a course there is a double se-

curity against the prejudices of judges who may partake of the wishes and opinions of the government, and against the passions of the multitude who may demand this victim with their clamorous precipitancy. So long, indeed, as this palladium remains sacred and inviolable, the liberties of a free government cannot wholly fail. But to give it real efficiency, it must be preserved in its purity and dignity, and not with a view to slight inconveniences, or imaginary burthens, be put into the hands of those who are incapable of estimating its worth, or are too inert, or too ignorant, or too imbecile to wield its potent arm.'

"It is scarcely to be supposed that in this country any serious danger could arise to the citizen or to the country generally from an open or flagrant violation of the fundamental right in question. Occasional instances have occurred in times of public danger and trouble wherein the citizen was deprived of his right to a trial by jury, and his life was unlawfully sacrificed, but such cases have been few, and have met with very general condemnation. A greater danger arises from practices and precedents that insidiously gain a foothold and power in courts of justice, by inadvertence and lack of due consideration. The great importance of trial by jury is sometimes lost sight of, even in courts of justice, in the disposition of petty misdemeanors, cases of no great moment, and what are called 'plain cases.' In the economy of time, the hurry of business, lack of attention, hasty consideration, irregular and unwarranted methods of trial are adopted, allowed, tolerated, and thus vicious practices spring up, creating sources of danger to constitutional right. It is the province and the duty of the courts to keep strict watch over and protect fundamental rights, in all matters that come before them. Those who administer the law should never forget that decided cases make precedents, precedents oftentimes of little moment in themselves, but which, in their accumulated power may, in some emergency, overturn principle and subvert the right of many people.

"Mr. Justice Blackstone, in commenting upon the great excellence of trial by jury, thus points out the evil to which we advert: 'So that the liberties of England cannot but subsist so long as this palladium remains sacred and inviolable, not only from all open attacks (which none will be so hardy as to make), but also from all secret machinations, which may

sap and undermine it by introducing new arbitrary methods of trial by justices of the peace, commissioners of the revenue, and courts of conscience. And however convenient these may appear at first (as doubtless all arbitrary powers, well executed, are the most convenient), yet, let it be again remembered that delays and little inconveniences in the form of justice are the price that all free nations must pay for their liberty in more substantial matters; that these inroads upon the sacred bulwark of the nation are fundamentally opposite to the spirit of our Constitution, and that, though begun in trifles, the precedents may gradually increase and spread, to the utter disuse of juries, in questions of the most momentous concern.' ''

The tendency of legislation is to increase the dignity of the jury and lessen the power of the courts to influence or control their verdicts. It is indispensable, therefore, to the due administration of the law that this important right be carefully guarded. No higher duty rests upon the trial judge than to see that an unbiased, unprejudiced, and impartial jury should in every case be provided. If jurors objectionable in the particulars here stated are permitted to serve, this case must become a precedent for others sure to follow, and thus the impairment of the right will insidiously gain such a foothold that the right itself would in time become the mere echo of a voice, a shadow, not substance, and as "idle as a painted ship on a painted ocean." These objectionable jurors are no doubt good men and representative citizens, perfectly conscientious in the belief they expressed of an ability to be indifferent between the state and the defendant, notwithstanding the knowledge they had obtained of the facts and witnesses in a court of justice where they had sat as jurors and given their verdict. So, too, the action of the learned trial judge, we are persuaded, was dictated by a proper sense of propriety and decorum. But the weakness and error in the ruling lay in the trial judge having that confidence in the ability of the jurors to be entirely impartial under the circumstances, which confidence the jurors had expressed, each in himself. Having passed upon the credibility of witnesses in a similar case upon substantially the same testimony, and having theretofore rendered a verdict on their oaths, it is not to be believed that they could sit upon this

case with such an opinion previously formed without it influencing their action.

"Answers by these jurors to categorical questions, though doubtless intended to be truthful, are less convincing than the known nature and tendency of the human mind." *State v. Hammon,* 84 Kan. 137, 140, 113 Pac. 418, 419.

We quote from the syllabus to the case of *Edgar v. State,* 59 Tex. Cr. 488, 129 S. W. 140:

"In a prosecution for the unlawful sale of intoxicating liquors, where the principal matter of defense was an attack on the credibility of the prosecuting witness, it was error to compel the defendant to select a jury from a panel including six jurors who had previously sat in a similar case, in which almost the sole defensive matter was the credibility of the same prosecuting witness."

Other authorities may be consulted: *Green v. State,* 54 Tex. Cr. 3, 111 S. W. 933; *Hardgraves v. State,* 61 Tex. Cr. 422, 135 S. W. 144; *People v. Mol,* 137 Mich. 692, 4 Ann. Cas. 960, 68 L. R. A. 871, 100 N. W. 913; *Boutcher v. State,* 4 Okl. Cr. 576, 111 Pac. 1006; *Wickard v. State,* 109 Ala. 45, 19 South. 491; *Roberts v. State,* 4 Ga. App. 378, 61 S. E. 497; 24 Cyc. 278, 279.

Other questions are raised which have been determined in the cases of *Duff v. State, ante,* p. 361, 171 Pac. 133, and *Birch v. State, ante,* p. 366, 171 Pac. 135, just decided, and therefore require no particular discussion.

Appellant, Priestly, was not accorded his right to a trial by an impartial jury within the constitutional provision. The case must be reversed, with direction to grant a new trial. It is so ordered.

ROSS and CUNNINGHAM, JJ., concur.

---

On the question of personal knowledge of facts to be proved as affecting competency of jurors, especially knowledge indicating bias, see note in 63 L. R. A. 810.