## PETERSON v. STATE.

### 6 Div. 130.

Supreme Court of Alabama.

June 29, 1933.

Rehearing Denied Oct. 12, 1933.

John W. Altman and Walter S. Smith, both of Birmingham, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Thos.
Seay Lawson, Asst. Atty. Gen., for the State.

364

GARDNER, Justice.

The appeal is from a judgment of conviction of murder in the first degree, with the infliction of the death penalty.

The questions argued by counsel for appellant will be treated in the order of their presentation in briefs. The first relates to defendant's effort, after the selection of the jury and the trial proceeded to the examination of some of the witnesses for the state, to have the court declare a mistrial on account of the alleged bias of juror Dugger, and his motion, after verdict, for a new trial based upon the same ground.

Counsel cite the recent case of Clark v. United States, 53 S. Ct. 465, 77 L. Ed. 993, as applicable here to the conduct of juror Dugger. But the cases are not analogous. In the Clark Case the juror was held in contempt of court for having given answers on her voir dire examination, which were willfully and corruptly false, and by such deception, practiced on the court for the purpose of rendering service to the defendant on trial, had procured a place as a member of the jury. No such charge against Dugger is sustained by the record. It appears that, following the usual questions by the court to the members of the venire, as prescribed by section 8610, Code 1923, a few of those summoned disqualified themselves and were ex-

cused as having a fixed opinion which would bias their verdict. Subdivision 7, section 8610, supra. The solicitor then asked the remaining members the following question: "Have any of you, gentlemen, expressed an opinion as to the guilt or innocence of this defendant?" Immediately three jurors stood, one of whom was juror Dugger, and said they had so expressed an opinion, based on what they had heard or what they had read in the newspapers. In answer to further inquiry, the three jurors stated that such opinion was subject to change, and they would render their verdict, whether for the state or the defendant, upon the sworn testimony in the case and upon that alone.

We may here interpolate that the crime of which defendant, a negro, was charged, was most revolting in its details, and a previous trial had resulted in a mistrial. The question at issue was solely one of identification, and there had, very naturally, resulted much discussion.

Upon completion of the examination, above noted, the state struck one of the three jurors so standing and defendant another. Dugger was permitted to remain and become a member of the jury. Neither the state nor defendant asked of either of these three jurors what opinion they had expressed or to whom. Neither of defendant's counsel propounded any question whatever to juror Dugger. It may be properly added here that counsel appearing on this appeal did not participate in the trial in the court below. During the progress of the trial and after the examination of three witnesses for the state, defendant moved for a mistrial of the cause and offered to show that the juror Dugger had previously expressed the opinion the defendant was guilty and should be electrocuted and a desire to get on the jury for such purpose. But Dugger had practiced no deception on the court or counsel. When asked the question, he had promptly stated, in open court, he had previously expressed an opinion. He denied emphatically, however, the statement contained in two affidavits on file (the two Hennings) that he had expressed any desire to get on the jury. The court denied the motion for a mistrial and expressed the view the objection to the juror came too late.

Our decisions recognize the constitutional right of a trial by an impartial jury, and that the "due and proper administration of the law—on the one hand protecting the public against the commission of crime, and on the other shielding innocence from passion and prejudice—materially depends on the fitness, competency, and impartiality of jurors," and many safeguards to this end have been made by statutes and decided cases. As said, however, in Henry v. State, 77 Ala. 75, "While it is of first importance that the right of both the State and of the defend-

ant to·a trial by an honest, intelligent and impartial jury, should be jealously maintained, the necessity of guarding against other evils, readily suggested, requires a time fixed, when the right to challenge shall cease."

Here the juror Dugger in open court acknowledged that from rumor and newspaper accounts of the crime he had expressed an opinion about the case, but stated that as a juror he would be governed by the evidence alone. He practiced no deception on the court or counsel, as in the Clark Case, supra, but made open admission of a previously expressed opinion. He was not called upon to state what opinion he had so expressed. Defendant's counsel, who had represented defendant on the former trial wherein a mistrial was declared, sat silently by and interposed no inquiry, seeming thereby to speculate, as it were, upon the chance as to whether such opinion had been favorable or unfavorable to their client's cause, and without asking him a question accepted Dugger as a member of the jury and permitted the trial to progress through the examination of several witnesses for the state before interposing any objection.

■ Usually the examination by the court under section 8610, Code 1923, suffices as to the qualification of the juror, and further examination on the part of the court is discretionary. But section 8662, Code 1923, confers upon the parties the right to further examine the jurors within proper bounds to ascertain "any matter that might tend to affect their verdict," which includes matters pertinent to enable the party to advisedly make peremptory challenge. Gholston v. State, 221 Ala. 556, 130 So. 69.

■ Defendant's counsel sought no exercise of this right of examination, and there is nothing to indicate the juror Dugger would not have fully answered as to what opinion he had expressed and to whom. Out of a regard for the due administration of the law and a "necessity of guarding against other evils," our authorities are to the effect that, under the circumstances above noted, the stated objection came too late, and any matter of disqualification waived. Batson v. State, 216 Ala. 275, 113 So. 300; Henry v. State, 77 Ala. 75; Mooring v. State, 129 Ala. 66, 29 So. 664. And such holding is in accord with the authorities generally. 35 Corpus Juris, 364, § 404½.

We have examined the cases noted by appellant (among them, Spooney v. State, 217 Ala. 219, 115 So. 308; Aldridge v. U. S., 283 U. S. 308, 51 S. Ct. 470, 75 L. Ed. 1054, 73 A. L. R. 1203; State v. Sanders, 103 S. C. 216, 88 S. E. 10; State v. McAfee, 64 N. C. 339; Priestly v. State, 19 Ariz. 371, 171 P. 137, 3 A. L. R. 1205; Jacobs v. State, 1 Ga. App. 519, 57 S. E. 1063), and find they involve no such situation as here presented, and do not run counter to the rule recognized by the authorities herein cited.

■ Moreover, it cannot be said the juror Dugger was in fact disqualified. Our decisions are uniform to the effect that, notwithstanding a previously expressed opinion, formed from rumor and newspaper accounts, if it appears that the juror states unqualifiedly and distinctly that after being sworn as a juror he could lay aside such previously expressed impression and find a verdict on the evidence alone, he is not disqualified.

■ What is said in Long v. State, 86 Ala. 36, 5 So. 443, 447, finds application here:

"While some of the expressions in the opinions may not be sufficiently limited or qualified for use as a general definition, the following may be deduced from the cases, when compared with each other, as expressing the meaning of a fixed opinion which would bias the verdict. The mere formation of an opinion, founded on rumor or hearsay, which is subject to change on hearing the evidence, and leaves the mind of the juror free to impartially consider the whole evidence, without giving undue credence to that which tends to prove the facts as heard. and to apply to the evidence the law as pronounced by the court, is not sufficient to disqualify. But an opinion, whether founded on rumor or conversations with witnesses, or on observation, which is a conviction, a prejudgment, disqualifying the juror to impartially consider the whole evidence,—that which tends to prove the facts as heard, as well as that which contradicts or explains,—and to apply free from bias the law as given in charge by the court, is a fixed opinion which · will bias the verdict. The mind of the juror should be in such a state of freedom, that he is capable of giving to the accused the weight of the presumption of innocence, and the benefit of a reasonable doubt. The statute affirms, in concise, intelligible, and comprehensive language, the common-law rule, as declared by Chief Justice Marshall in Burr's trial. 'That light impressions, which may fairly be supposed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror; but those strong and deep impressions, which will close the mind against the testimony that may be offered in opposition to them, which will combat that testimony, and resist its force, do constitute a sufficient objection to him.'

"The sufficiency of the cause of challenge is determined by the trial court, and the inquiries are addressed to the conscience of the juror under oath. He is examined touching his qualifications, in the presence of the

judge, who sees his manner of answering the questions, and the probing of his conscience, which is often times more clearly indicative of his disinterestedness or bias, than the mere words used. The reviewing court, therefore, should exercise caution, and the finding of the trial court should not be set aside, unless it affirmatively appears, that, on the answers of the juror, taken as a whole, he entertained a fixed opinion which would bias his verdict."

The principles recognized in the Long Case, supra, have been subsequently approved. Thomas v. State, 150 Ala. 31, 43 So. 371; Godau v. State, 179 Ala. 27, 60 So. 908; Pope v. State, 174 Ala. 63, 57 So. 245; Jarvis v. State, 138 Ala. 17, 34 So. 1025; Funderburk v. State, 145 Ala. 661, 39 So. 672; Walker v. State, 146 Ala. 45, 41 So. 878.

On the motion for a new trial the affidavits offered by the defendant proved no more in substance than what the juror had admitted as to his previous expression of opinion, with the exception of that of the two Hennings, who added that Dugger at the same time expressed a hope that he might get on the jury and convict. This statement Dugger emphatically denied. The trial court had the opportunity of observing juror Dugger and forming some judgment as to his honesty of purpose, and observance of his acts as a juror, and may have also considered the likelihood of a misunderstanding on the part of the Hennings as to what in fact Dugger had said, and therefore may have reasonably concluded that in this respect he was misunderstood. But, however that may be, the statement, if made, was but a part of the same conversation in which the opinion as to guilt was expressed, all based on rumor and newspaper accounts, and to stand on no higher ground than the expressed opinion itself. As we have previously noted, there is nothing in the record to indicate that Dugger intended to deceive or had any ulterior motive to become a member of the jury. He had indulged in much talk, as had doubtless numerous others, but, when asked as to any expression of opinion, promptly arose and admitted it in open court. But, notwithstanding all of this talk, the juror distinctly stated he would render a verdict from the evidence alone, and under our authorities was not disqualified thereby.

It cannot be affirmed, therefore, upon either theory, that defendant was denied any constitutional right, either state or federal, or that reversible error can be rested upon the action of the court as to juror Dugger.

■ Appellant next insists upon a reversal for a failure of the court in the oral charge to instruct the jury on murder in the second degree. The language of the oral charge indicates that all counsel in the cause agreed that the case disclosed murder in the first degree or nothing, and clearly from a standpoint of sound reasoning this must be accepted as correct.

We recognize, however, that by force of our statutes (sections 4457 and 9507, Code 1923), it is the duty of the court to instruct the jury as to the elements of both degrees of murder, regardless of the facts in the case. Jackson v. State (Ala. Sup.) 145 So. 656.[1] But the matter of objection to the oral charge was raised for the first time on motion for a new trial. There was no exception reserved to any portion thereof, and defendant's counsel indicated acquiescence therein. The precise question was presented and settled in McPherson v. State, 198 Ala. 5, 73 So. 387, where the court said: "The partial or total failure or omission of a trial court to instruct a jury in its oral charge with reference to principles or rules of law that may be, or even are, involved in the trial, cannot be made the basis for a reviewable question on appeal. * * * The party's remedy in such cases of mere failure or omission is to request special written instructions according to the practice established by the statutes." The holding of the McPherson Case is further to the effect that, though the court in its oral charge instructs the jury, the defendant could only be adjudged guilty of murder in the first degree or else found innocent and discharged, yet such instruction, though erroneous, could not be made the subject of review on appeal in the absence of an exception reserved thereto. And this is the accepted rule of our decisions. Tucker v. State, 202 Ala. 5, 79 So. 303; Ex parte State ex rel., 204 Ala. 389, 85 So. 785.

The jury by their verdict fixed the degree of murder as of the first degree, and the case of Johnson v. State, 17 Ala. 618, cited by appellant, is here inapplicable.

There was no objection made or exception reserved to any remarks of the trial court, and the record presents nothing for review in that regard. This is said merely by way of response to a general statement in brief for appellant wherein 17 Corpus Juris, p. 297, is cited.

■ The opening argument of the assistant solicitor, or any substantial portion thereof, does not appear in the record, and in what connection the statement was made by him that "the evidence shows this defendant to be a gorilla in human form" is not made to appear. It would appear to have been based upon the assumption, of course, that the defendant was guilty of the crime. So considered, therefore, clearly no prejudicial error appears. Should it be treated, however, as improper argument, yet we think it may be permitted to pass as belonging to that class of hasty or exaggerated statements of opin-

[1] 226 Ala. 72.

ion counsel often make in the heat of debate, which do not, and are not expected to become factors in the formulation of the verdict, and which usually are valued at their true worth. Moulton v. State, 199 Ala. 411, 74 So. 454; Cross v. State, 68 Ala. 484.

There is no horizontal rule by which prejudicial qualities of improper remarks in argument to the jury can be ascertained in all cases, and each case must be decided upon its merits.

The case of Gibson v. State, 193 Ala. 12, 69 So. 533, cited by appellant, concerned the statement of a fact in argument unsupported by the proof, and other cases noted (James v. State, 170 Ala. 72, 54 So. 494; Simmons v. State, 14 Ala. App. 103, 71 So. 979; Tannehill v. State, 159 Ala. 51, 48 So. 662; Moulton v. State, supra) relate to the question of appeal to race prejudice, and each differs widely from the situation of which complaint is here made. And in consideration of this argument due regard should be had to the revolting details of the crime, as was done by the court in Brown v. State, 121 Ala. 9, 25 So. 744.

We find nothing in this exception to justify a reversal of the cause.

 If it be assumed the question of the solicitor to the witness Nell Williams (transcript, p. 70) was a leading one, this was a matter resting in the sound discretion of the court, and the fact that the statement she testifies defendant made on the occasion of the crime may have had a tendency to inflame the minds of the jury does not argue against its admissibility as a fact in the case and as part of the res gestæ.

 The question of prime importance was one of identification of the defendant. The witness Nell Williams, present during the entire period, pointed her accusing finger at the defendant, and we see no objection to permitting her to say, in answer to the inquiry as to whether or not she had any doubt in her mind as to the matter of identification, "I know that he is the negro." It was the sister of the witness Nell Williams for whose murder the defendant was being tried, and she points out the defendant as the guilty party. Effort was made to show she was mistaken in her identification. There was therefore nothing improper in permitting the state on redirect examination to show that the witness had looked at many negroes. Cotton v. State, 87 Ala. 75, 6 So. 396. The commission of the crime by a negro man was not a matter of dispute, and the issue was, as previously stated, one of identification.

 It would seem, therefore, as to whether the place of the crime (a narrow road leading from the side of an highway) showed signs of having been frequently visited would be immaterial. But, conceding its material-

ity, it appears the witness Nell Williams sufficiently answered the question (transcript, p. 74) by stating it did not show it was used a great deal.

 The latitude and extent of cross-examination is largely a matter within the sound discretion of the trial court (Alabama Power Co. v. Berry, 222 Ala. 21, 130 So. 541); yet it is a valuable right not to be too narrowly restricted to the substantial prejudice of the party exercising it (Mitchell v. Birmingham News Co., 223 Ala. 568, 137 So. 422). We are not persuaded this right was so narrowly restricted as to prejudicially affect defendant's case, with particular reference to the cross-examination of Miss Williams found on pages 80 and 81 of the record. The witness had emphatically answered that she did not, on her visit to the jail where defendant was confined, ask defendant if he was not the man. She testified that she asked him no such question, but told him he was the man. Further questioning along that line, and assuming a contradiction of what the witness had just said, was a matter resting in the court's discretion.

Defendant offered in evidence a circular offering a reward and containing a description of the murderer, and it is assumed the description differs from that of the defendant, though the record here contains no definite description of the defendant, and the photographs do not suffice for that purpose. But this aside, and assuming such difference, there was no evidence that Miss Williams was herself connected with the circular or participated in its preparation or gave the description therein contained. Whether or not she knew there was a description being circulated purporting to have been given by her was immaterial, unless, of course, it appeared that she had participated therein and acquiesced in the description different from this defendant and by way of contradiction. She was of course under no duty to follow up each rumor and pursue hearsay.

 Defendant elicited from the witness Nell Williams that it was her pistol that was drawn on defendant at the time she pointed him out as the guilty man, which pistol was carried in the car in which she and her companion of that day were riding on the streets of Birmingham. We see nothing of which defendant can complain in the court's allowing the witness to state she had been carrying the pistol since the commission of the crime on August 4th.

The trial court expressly stated to defendant he could show he was sick at the time of the commission of the crime (transcript, 97), and the witness Miller did testify that defendant was a sick man for some time prior to August 4th and up to August 4th. This met all defendant's requirements.

 Whether or not Nell Williams requested the ambulance driver and his companion,

or one of the officers, that no publicity be given the affair, would appear to be entirely immaterial. If it bore any rational relation to the issue involved, it was not made evident by the question and no offer made to disclose any such materiality.

■ A Mrs. Satterfield testified for defendant, and in corroboration of his alibi defense. The court had sustained the state's objection to a question propounded by defendant for the purpose of showing how she fixed in her mind this particular date, and, conceiving that error had been committed in this regard, corrected his ruling, and expressly permitted the witness to testify fully in regard thereto. Record, p. 134. The insistence as to error in this regard therefore is without merit.

■■ Defendant testified in his own behalf, and after his cross-examination testified fully on redirect examination and in rebuttal of the cross. At the close of the redirect examination, counsel directed him to pull up his breeches above his knees. The objection of the state was sustained, and exception reserved. From a standpoint of court procedure, this was not a matter in rebuttal, and the further examination of the witness on his redirect examination was a matter resting largely in the sound discretion of the court. Mann v. State, 134 Ala. 1, 32 So. 704; Dukes v. State, 210 Ala. 442, 98 So. 368. Moreover, whether or not the proffered exhibition would have contributed anything to defendant's cause is left entirely to speculation. The crime was committed, not by physical force, but by means of a deadly weapon drawn and freely used. If the purpose was merely to excite feeling or sympathy, such exhibition would properly be disallowed. Louisville & Nashville R. R. Co. v. Pearson, 97 Ala. 211, 12 So. 176; Wagner v. Chicago, R. I. & P. Ry. Co., 277 Ill. 114, 115 N. E. 201. Reversible error cannot be rested upon this ruling.

The general observation in brief that defendant has been denied a speedy public trial by an impartial jury, guaranteed under the Sixth Amendment to the Federal Constitution, and the equal protection of the laws guaranteed by the Fourteenth Amendment to that instrument, needs no discussion, and may be disposed of by the mere statement of our conclusion that the record discloses no violation of defendant's constitutional rights either state or federal. Nor does the suggestion in brief that there has been discrimination on account of race or color find any support in the record.

■■ It is earnestly insisted the court committed error in the denial of a new trial based upon the ground the verdict was contrary to the great weight of the evidence. It may be conceded this question is not one free from difficulty. The rule by which this court is guided upon matters of this character is too well understood to need repetition here. No ground for new trial is more carefully scrutinized or more rigidly limited than this, and the presumption in favor of the correctness of the verdict is strengthened when the presiding judge, who saw and heard the witnesses, declines to grant the new trial upon this ground. Cobb v. Malone, 92 Ala. 630, 9 So. 738.

The horror of the crime committed on the occasion here in question (the murder of two young ladies, one of whom was ravished immediately preceding her fatal wound, the robbery of all three, and assault with intent to murder the third), need not be here detailed, as they are only important as tending to show the impression upon the mind of the third young lady, Nell Williams, who survived and testified in this cause, pointing to the defendant as the guilty agent,

The important question is one of identification, and, while the testimony of Mrs. Morton lends slight corroboration, yet on the whole defendant's fate rests in the main on the testimony of Nell Williams, who is positive as to his identification. She was in the presence and hearing of the perpetrator of this crime for about two and one-half hours, beginning at 5:30 o'clock on the afternoon of the 4th of August until he left the scene at 8 o'clock, and during much of this time there was discussion with pleadings on the part of the young ladies that they be permitted to go unmolested. And unaided by any suggestion from any one she pointed to this defendant as the guilty agent while she was out riding on the streets of the city on September 23d, following the commission of the crime on August 4th.

The trial judge saw and heard this witness and had an opportunity to note her demeanor on the stand, and to likewise observe the defendant in his emphatic denial of guilt and those of his witnesses who gave evidence in establishing his alibi defense that he was at his home during the time of the commission of the crime, as well as those who testify to variant descriptions of the perpetrator of the crime, given them by Nell Williams soon after its commission. The record has been examined with care and discussed by the court in consultation. We are mindful of the responsibility imposed, but, upon due consideration we are not persuaded that, under the rule by which as a reviewing court we are governed, the action of the presiding judge in denying the motion for a new trial upon this ground should be here disturbed.

■■ Appellant in brief indulges in some criticism of the oral charge of the court. But no exception was reserved to any part of the charge, and defendant's counsel gave indication of entire acquiescence therein. In the absence of an exception reserved, there is nothing presented here for review. McPher-

son v. State, 198 Ala. 5, 73 So. 387. It may be added, however, that the record does not support the insistence that the court stated in the oral charge: "It ought not to take but a few minutes to reach a verdict in this case." The court reporter who reported the case testifies that no such language was used by the court in the oral charge, which is set out in the record, and which contains no such sentence. Nor is there anything in the bill of exceptions tending to sustain this insistence. The affidavit of defendant's counsel to such effect on motion for a new trial is unsupported by the official report and by the record of the cause by which we are here to be governed. Patterson v. State, 224 Ala. 531, 141 So. 195.

Each of the written charges given at the request of the state dealt with the question of a reasonable doubt and its meaning approved by previous decisions of this court. They have been examined and need no discussion.

 Following the rule that a bill of exceptions is to be construed most strongly against the party excepting (Sammis v. Johnson, 22 Ala. 690; Dickens v. State, 142 Ala. 49, 39 So. 14, 110 Am. St. Rep. 17), it would result as disclosing no exception to the question asked the witness Johns (record, p. 117), but that the reservation of exception related to other intervening objections. But this aside, and considered upon its merits, no reversible error appears. Johns was defendant's witness, and the question asked indicated on its face a purpose to contradict him and nothing more. Such was its apparent object. In the absence, therefore, of any showing or any indication that the question was for any purpose other than impeachment or contradiction, the ruling of the court is brought within the general rule that a party cannot impeach or contradict his own witness. Gandy v. State, 81 Ala. 68, 1 So. 35; Pettus v. Louisville & Nashville R. Co., 214 Ala. 187, 106 So. 807; Davis v. Anderson, 163 Ala. 385, 50 So. 1002; Louisville & Nashville R. R. Co. v. Hurt, 101 Ala. 44, 13 So. 130; Putnam v. U. S., 162 U. S. 687, 16 S. Ct. 923, 40 L. Ed. 1118. Note, State v. Wolfe, 74 A. L. R. 1042 et seq. Such being the apparent object of the question, we are not concerned with any exceptions to the general rule illustrated by Thomas v. State, 117 Ala. 178, 23 So. 665, White v. State, 87 Ala. 24, 5 So. 829, Campbell v. State, 23 Ala. 44, and others cited in Alabama Power Co. v. Hall, 212 Ala. 638, 103 So. 867.

We have carefully reviewed all the questions argued by counsel for appellant, and find nothing in them calling for a reversal of the judgment. But, mindful of our duty in cases of this character, due consideration has been given all other questions properly presented in the record. But we do not find that any of them are of such importance as to call for separate treatment in this opinion. Suffice it to say they have been carefully reviewed by the court in consultation, and found to present no error to reverse.

Upon consideration of the whole case, our conclusion is that no reversible error appears, and the judgment of conviction will be affirmed.

Affirmed.

## On Rehearing.

The brief, on application for rehearing, in the main stresses again the question originally pressed upon our attention. These we have duly reconsidered, and the conclusion reached that the treatment thereof in the original opinion is sufficient, and as to which we rest content with the discussion found therein.

Reference is made to the supplemental brief filed by one of defendant's counsel after submission of the cause, and we may with due propriety express our accord with his associate counsel, that it contains an able presentation of the defendant's case from the standpoint of argument of the facts and a general résumé of the trial. And it may be added that its careful consideration was not neglected prior to the preparation of the opinion in the cause. And, mindful of our duty and the responsibility resting upon us in cases of this character, these facts have again been reviewed.

But since the passage of the Act of 1915 (Gen. Acts 1915, p. 594, section 10336, Code 1923), it has not been the policy of this court to enter into a detailed discussion of the facts (Caples v. Young, 206 Ala. 282, 89 So. 460; Griswold v. Duke, 224 Ala. 402, 140 So. 427); nor would it here serve any useful purpose. We have considered, therefore, the general treatment of the facts in the original opinion sufficient, and we see no occasion for their further discussion here.

 It is further insisted that defendant was denied due process of law in that his counsel proved incompetent upon the trial (present counsel having been employed subsequent to conviction), and we are cited in support thereof the recent case of Powell v. Alabama, 287 U. S. 45, 53 S. Ct. 55, 57, 77 L. Ed. 158, 84 A. L. R. 527. But the two cases are so widely different as to render the Powell Case inapplicable here. There the holding was that the due process of law clause of the Federal Constitution had been violated in that the defendant had been "denied the right of counsel, with the accustomed incidents of consultation and opportunity of preparation for trial." No such situation is here presented. As noted in the original opinion, the two attorneys who participated in the trial of this defendant and employed for that purpose, and not under appointment of the court as in the Powell Case, were the same attorneys who had on a previous occasion represented de-

fendant and secured a mistrial of his cause. Indeed, it is not insisted there was any lack of consultation and preparation for trial, but the argument rests upon the theory that a careful scrutiny of the record discloses a failure in some instances to reserve exceptions where exception should have been reserved, or to interpose objection, or to offering a certain class of witnesses in support of defendant's alibi theory and good character. Perhaps some of these criticisms, viewed in the light of calm reflection, may be conceded as well taken, while others are of more doubtful character and leave room for a difference of opinion. But, however that may be, there is nothing in the Powell Case that indicates the principle therein enunciated was intended to be given so wide a scope and of so far-reaching a consequence as to embrace a search of the record for errors of attorneys, with the result that the trial of the skill or competency of the attorney becomes of equal dignity with the trial of the defendant as to his guilt. Indeed, the Powell Case, as previously noted, is rested only upon the theory that the defendant was "denied the right of counsel, with the accustomed incidents of consultation and opportunity of preparation for trial," and we do not conceive further discussion is necessary to demonstrate the argument of its applicability to the present case is wholly untenable.

In the original opinion we considered the statement of the assistant solicitor to which exception was reserved. But it is urged that the assistant solicitor, during the trial, made disparaging side remarks to defendant's counsel, or at least to one of them, and asked some questions of witnesses calculated to prejudice defendant's case, and that, although in many instances no objections were interposed, and no exceptions were reserved thereto, yet, reviewing the whole case, a new trial should have been granted, under the authority of Birmingham Baptist Hospital v. Blackwell, 221 Ala. 225, 128 So. 389.

This insistence was likewise duly considered by the court in consultation, but a discussion deemed unnecessary. And we think that only a casual reading of the Blackwell Case will disclose that it furnishes no ground for a new trial here, and so clearly does it appear to our minds that the two cases are not analogous that we consider it unnecessary to enter into a discussion of the points of differentiation.

True there were some unfortunate colloquies between the assistant solicitor and defendant's counsel, and some objectionable remarks interposed, all of which may well be disapproved. But it is difficult to perceive that the jury did not correctly regard all of this as aside from the issue and valued these remarks at their true worth. Many of the questions, which defendant now criticizes, were asked on cross-examination of defendant's witnesses, including defendant himself, wherein there is much latitude of discretion allowed the court. Mitchell v. Birmingham News, 223 Ala. 568, 137 So. 422.

There is no occasion here to examine the different criticisms in this regard, as for the most part no objections were interposed, and in some instances the questions were withdrawn. Some of those criticized were clearly unobjectionable. Illustrative are questions propounded to some of defendant's witnesses as to whether or not they had contributed to the expense of his trial, a matter proper for inquiry to test the interest of the witness. But we need not further pursue the discussion. We can see nothing in these criticisms, viewed singly or collectively, that would call for the granting of a new trial.

Upon original consideration of the cause we discussed those questions which we deemed of first importance, and considered such treatment of the case sufficient for all purposes. Out of deference to the earnest insistence of counsel on this application, we have again reviewed the case and elaborated upon matters previously considered, but not discussed in the opinion.

We are still of the view no error to reverse appears, and that the judgment should stand affirmed. The application is therefore denied.

Application overruled.

ANDERSON, C. J., and THOMAS, BOULDIN, BROWN, FOSTER, and KNIGHT, JJ., concur.