557 P.2d 552

The STATE of Arizona, Appellee,

v.

Victor Armando SALAZAR, Appellant.

No. 2 CA–CR 848.

Court of Appeals of Arizona, Division 2.

Sept. 30, 1976.

Rehearing Denied Nov. 4, 1976.

Petition for Review Denied Dec. 7, 1976.

**622**

Bruce E. Babbitt, Atty. Gen., by Heather Sigworth, Asst. Atty. Gen., Tucson, for appellee.

Scholl & Kurlander by Harley D. Kurlander, Tucson, for appellant.

## OPINION

HOWARD, Chief Judge.

Appellant and four co-defendants were arrested and charged with: (1) unlawful possession of heroin, (2) unlawful transportation of heroin, (3) conspiracy to sell heroin and (4) conspiracy to transport heroin. The four co-defendants pled guilty to one count and did not go to trial. Appellant went to trial and was convicted by a jury of conspiracy to sell heroin and conspiracy to transport heroin but was found not guilty of the substantive crimes of unlawful possession of heroin and unlawful transportation of heroin.

The facts show that undercover agents, after two abortive attempts and a test sale, arranged with Armando Rivera and Hector Gutierrez to purchase five ounces of heroin. The sale was to take place in a shopping center in the south part of the City of Tucson on September 13, 1975. This sale was postponed because the heroin, which was being "cut", was still drying. On September 16, 1975, the agents were advised that the heroin was ready and a sale was again set for the same location. When Rivera arrived at the scene he advised the agents that only four and a half ounces were ready. The agents, tired of waiting, agreed to buy that quantity. Rivera then left and went to the location where the heroin was being stored and cut. He had previously been to the house on September 14th at which time appellant and two other persons named Cavasos and Solis were present when Hector Gutierrez was attempting to "cut" the heroin in a blender. Mr. Gutierrez was having trouble cutting the heroin because it was sticking to the walls of the blender. Appellant suggested that they try to freeze or find another way to dry it so it would not stick. Rivera also testified that on September 16, 1975, prior to meeting with the undercover agents, he had been to the house where the heroin was located. At that time appellant, Cavasos and Solis were present while the heroin was still being cut and Rivera was informed by Gutierrez that Salazar, Solis and Cavasos had sampled the heroin.

When Rivera returned on September 16, after initially meeting with the agents at 7:30 p.m. at the shopping center, he told Gutierrez that the sale was ready to take place. He and Gutierrez had a little argument because Gutierrez insisted that appellant, Solis and Cavasos accompany him. The dispute finally ended when Gutierrez told Rivera that he knew what he was doing and that the other three were going to come along. They departed from the residence, Gutierrez and Rivera riding in a '68 Chevrolet Camaro which contained the heroin in the glove compartment and followed by appellant, Cavasos and Solis in a '58 Chevrolet.

Undercover agents other than those who were going to make the purchase were staked out in the area. Prior to the Camaro arriving at the parking lot, they observed the 1958 Chevrolet drive through the area where the sale was to take place and then pull over to a curb and shut off its lights.

Shortly before 8:30 p.m. Gutierrez and Rivera arrived at the rendezvous. As soon as they ascertained that the undercover agents had the required amount of money, Gutierrez left in the Chevrolet Camaro allegedly to secure the heroin. The agents

that were watching the black Chevrolet were informed that Gutierrez had left the parking lot. Within a minute they observed Gutierrez pull up alongside the black Chevrolet and then, in less than a minute, Gutierrez returned to the parking lot in the shopping center.

After the sale was completed in the parking lot, Gutierrez and Rivera were immediately placed under arrest. The agents watching the black Chevrolet, upon being informed of the arrest, also placed the three occupants of the black Chevrolet under arrest. They searched the automobile and found two syringes and a ball of tin foil containing a brown substance.

Appellant presents the following questions for review:

"I. Whether two potential grand jurors revealed bias sufficient to disqualify them from the grand jury. If so, whether their not being excused vitiates the indictment.

II. Whether probable cause existed for the arrest of the defendant in order to validate the search incident thereto.

III. Whether the evidence was sufficient to find the defendant guilty of the conspiracy charges, and if so, whether the jury so misunderstood and applied the law of conspiracy as to require a new trial.

IV. Whether the modus operandi of countersurveillance techniques of narcotics dealers is the proper subject for expert testimony.

V. Whether a statement made by the prosecutor in the instant case violated defendant's right not to have comments made about the defendant's failure to take the stand."

## THE GRAND JURY

Pursuant to Rule 12.9 of the Rules of Criminal Procedure, appellant challenged the grand jury proceedings alleging that two of the prospective grand jurors should have been disqualified by the court.

The first instance relates to a Mr. Bender who later was made the foreman of the grand jury. During the impanelment of the grand jury the following colloquy took place between Mr. Bender and the court:

"THE COURT: . . . Does anybody have any problems with what I have said?

MR. BENDER: Your Honor, yes, I have had a problem in my family and I definitely have very strong feelings towards narcotics. I don't know if I could be fair to a narcotic pusher or anybody that has been involved in it.

THE COURT: I don't know exactly what you mean by 'to be fair'. Of course, what you would have to do is to listen to the evidence, and if you felt that the State had produced sufficient evidence for you to believe that there was probable cause—and we are not dealing here with the grand jury, and I will explain this more later, we are not dealing with beyond a reasonable doubt, we are dealing with probable cause to believe that a crime had been committed and to believe that the person who was being investigated committed it—then it would be your duty to return an Indictment against him. However, if you felt that there was not probable cause, that the State had not shown to you to that degree, then it would be your duty not to return an Indictment, even though there might be just a mere suspicion. You can't base an indictment on just mere suspicion and conjecture. We have certain standards.

So do you feel that you would be able to follow those standards?

MR. BENDER: Well, I have had a lot of cases in the service of drug abuse, too, which has pretty well gotten me on the other side of the fence.

THE COURT: Well, I am sure that everybody here feels pretty strongly about that, and I am not trying to put words in your mouth, sir, but I think it

is important, certainly if there is probable cause it is important to return an Indictment, but if there isn't probable cause and it is just a mere suspicion and nothing more, then it's just as important to return what we call really a no bill in accordance with the law.

Do you feel you could do that?

MR. BENDER: I think I can probably, in the eyes of the law I could probably—

THE COURT: If you change your mind as I go along here, don't hesitate to tell me about it."

■ Appellant claims the court erred in not disqualifying Mr. Bender from sitting on narcotics cases, or in any event, in not further questioning Mr. Bender. We do not agree. Rule 12.2, Rules of Criminal Procedure, provides that a person shall be disqualified from serving as a grand juror in any particular action if he is biased or prejudiced in favor of either the State or the defendant. Whether the existence of a state of mind on the part of the juror is such as will prevent him from acting with entire impartiality is ordinarily a matter committed to the discretion of the trial court. But when the exercise of such discretion appears to be clearly erroneous, under well-settled principles of law, the appellate court is bound to interfere. *Priestly v. State,* 19 Ariz. 371, 171 P. 137 (1918). A prospective juror is not disqualified because he may harbor strong feelings about crimes. *State v. Brady,* 66 Ariz. 365, 189 P.2d 198 (1948). Impartiality does not mean that the prospective juror must have no opinion one way or the other about murder, robbery, or narcotics. Indeed, if a juror were to state he had no opinion on such subjects, one might well wonder whether he should be disqualified on the basis of mental incompetency. In the final analysis the question is whether the juror can base his decision solely on the evidence presented to him and the law. Mr. Bender stated that he could do so and the court did not commit error.

Also during the impanelment the following exclange occurred:

"MR. LETNES (County Attorney): If you can all serve, that is great, but we should ask you to consider it once again, because this is where the real problem comes up with most people. That is all I have, your Honor.

THE COURT: Yes.

MRS. RAU: This gentleman and I know each other.

THE COURT: Before you are through I am sure all of you will get to know each other.

MRS. RAU: I mean, I didn't know if that was prejudicial or something.

THE COURT: I hope not."

■ Appellant claims that the court erred in not establishing the fact that Mrs. Rau was fair and impartial and should have discharged her because she knew the prosecutor. We do not agree. The record does not indicate that the person to whom she was referring was the prosecutor.

### THE SEARCH FOR THE 1958 CHEVROLET

■ Appellant claims that the items found inside the 1958 black Chevrolet should have been suppressed since the officers had no probable cause to arrest the occupants of the automobile nor did they have probable cause to believe that the automobile contained any contraband. This contention is without merit. The evidence shows that the officers had probable cause to believe the occupants of the black Chevrolet were participating in the narcotics transaction. The items of evidence of which appellant complains were seen by an officer when he looked inside the automobile with his flashlight. The items being in plain view, their seizure was lawful. *State v. Warness,* 26 Ariz.App. 359, 548 P.2d 853 (1976).

### TESTIMONY AS TO MODUS OPERANDI

Officer Teachout was allowed to testify, over appellant's objection, about the meth-

ods and techniques used by narcotics dealers when a buy is to be made. He stated that very often the narcotics dealer employs countersurveillance techniques. The simplest and most common technique being the use of a vehicle to observe the area where a sale is going to take place in order to detect any suspicious activity indicating that the persons involved in the transaction were actually undercover agents. Appellant claims that such testimony was inadmissible opinion evidence. In particular, he asserts that the testimony was not outside the knowledge of the average person and therefore the officer should not have been permitted to testify as an expert witness.

An expert witness is one who possesses skill or knowledge superior to that of men in general. *State v. Keener,* 110 Ariz. 462, 520 P.2d 510 (1974). Whether a witness is qualified as an expert rests in the sound discretion of the trial court and, absent an abuse of such discretion, we do not interfere. *State v. Keener,* supra.

The issue before us is not the competency of the witness but rather whether his statements concerning the modus operandi of narcotics dealers in the use of countersurveillance vehicles was a proper subject of expert testimony.

The decisive consideration in determining the admissibility of expert opinion evidence is whether the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact. *People v. Cole,* 47 Cal.2d 99, 301 P.2d 854 (1956); *People v. Clay,* 227 Cal.App.2d 87, 38 Cal.Rptr. 431 (1964).[1] Wigmore puts the test thusly:

"But the only true criterion is: On *this subject* can a jury from *this person* re-

ceive appreciable help? In other words, the test is a relative one, depending on the particular subject and the particular witness with reference to that subject, and is not fixed or limited to any class of persons acting professionally." 7 Wigmore On Evidence, 3rd Ed. Sec. 1923, p. 21. (Emphasis in original)

We believe the facts show the subject matter of Officer Teachout's expert testimony was sufficiently beyond common experience so that his opinion would assist the trier of fact. His testimony gave meaning to the evidence. Appellant's defense was that he did not participate in the narcotics transaction and that his mere presence was insufficient to convict him. Thus the testimony of Officer Teachout permitted the jury to appreciate that appellant's activities at the scene, while in themselves perhaps seemingly harmless, indicated appellant's active participation in the sale.

## INSUFFICIENT EVIDENCE OF A CONSPIRACY

Appellant contends there was insufficient evidence to support a guilty verdict on the conspiracy charges. Mere knowledge or approval of or acquiescence in the object and purpose of a conspiracy without an agreement to cooperate in achieving it is not enough to make one a party to the conspiracy. *Thomas v. United States,* 57 F.2d 1039 (10th Cir. 1932); *Jones v. United States,* 365 F.2d 87 (10th Cir. 1966). However, a person who aids and abets a conspiracy with knowledge of the existence of the conspiracy can be convicted of conspiracy. *Marino v. United States,* 91 F.2d 691 (9th Cir. 1937); *Pattis v. United States,* 17 F.2d 562 (9th Cir. 1927); 15A C.J.S. Conspiracy § 73; 16 Am. Jur.2d Conspiracy Sec. 15. There is no doubt that Gutierrez and Rivera entered into an agreement to unlawfully sell and transport heroin. There is sufficient evi-

1. See Annot. "Expert Testimony as to Modus Operandi of Criminals With Respect to Particular Types of Crime", 100 A.L.R.2d p. 1433 et seq.

**626**

dence to show that appellant knew of this agreement and aided and abetted it. We therefore are unable to agree with appellant's contention.

## JURY'S MISUNDERSTANDING AS TO LAW OF CONSPIRACY

 Appellant claims a new trial is required because the fact that the jurors found him not guilty of the substantive offenses of possession of heroin and transportation of heroin shows they were confused as to the law of conspiracy. This contention is without merit. As we pointed out in *State v. Estrada*, 27 Ariz.App. 38, 550 P.2d 1080 (1976), the fact that the jury found appellant not guilty of the substantive offenses does not necessarily mean it found he was not in possession of the heroin. The acquittal is no more than the jurors' assumption of a power they had no right to exercise but to which they were disposed through lenity. Whether their verdict was a result of carelessness or compromise is immaterial. Juries may indulge in precisely such a motive or vagaries.

## PROSECUTORIAL MISCONDUCT IN FINAL ARGUMENT

The prosecutor in his final argument said:

"That's my theory. It's not a smoke-screen. We went back there. If my theory is a smokescreen, then why didn't *he* present a theory to you about why *he* went there." (Emphasis added)

 Appellant contends that this argument constituted a comment on his failure to take the witness stand. We do not agree. The first "he" referred to was the defense attorney and the second "he" referred to was Hector Gutierrez. This argument was in response to the defense counsel's closing argument that the testimony concerning Hector Gutierrez' going to the black Chevrolet in order to secure the heroin was a smoke screen. The prosecution's theory was that Gutierrez went

back to the 1958 black Chevrolet in order to check with the occupants to be sure the area was clear of any suspicious activity. The prosecutor's final argument was no more than a response to the defense's characterization of the prosecutor's theory and pointed out to the jury that the defense attorney, although quick to characterize it as a smoke screen, did not himself offer an explanation as to why Hector Gutierrez went over to the black Chevrolet in which appellant was an occupant prior to the actual sale taking place. The prosecutor's argument did not constitute a comment on appellant's failure to take the stand.

Affirmed.

KRUCKER and HATHAWAY, JJ., concur.